UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In Re PETITION OF NOVALPINA CAPITAL PARTNERS I GP S.À.R.L. FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | **MEMORANDUM OPINION & ORDER** <br><br> 23 Misc. 25 (PGG) |
|---|---|

PAUL G. GARDEPHE, U.S.D.J.:

On January 27, 2023, Petitioner Novalpina Capital Partners I GP S.À.R.L. filed an ex parte petition pursuant to 28 U.S.C. § 1782 for discovery in aid of pending and contemplated proceedings in Luxembourg. Petitioner sought subpoenas directing Treo Asset Management LLC ("Treo AM") and certain of its officers and employees – Finbarr O'Connor, Gavin Farrell, and Jeffrey Dunn[1] – to produce documents and provide testimony for use in Luxembourg. (Dkt. No. 1) In a June 8, 2023 order, this Court granted that application (Dkt. No. 13), and subpoenas were subsequently issued to Treo AM, O'Connor, Farrell, and Dunn ("Respondents"). (See Dkt. No. 14 at 1)[2] Respondents have moved to quash the subpoenas. (Resp. Mot. (Dkt. No. 16))

For the reasons stated below, Respondents' motion to quash will be granted in part and denied in part.

## BACKGROUND

### I.    FOREIGN PROCEEDINGS

Petitioner was formerly the "general partner of the private equity fund known as Novalpina Capital Partners I SCSp (the 'Fund'), established in 2017." (Jan. 27, 2023 Thieltgen Decl. (Dkt. No. 5) ¶ 10) Stefan Kowski, Bastian Lueken, and Stephen Peel – the three founders

---

[1] O'Connor is Treo AM's Chief Investment Officer (da Silva Decl. (Dkt. No. 18) ¶ 5); Farrell is Treo AM's Chief Operations Officer and Chief Compliance Officer (Farrell Decl. (Dkt. No. 21) ¶ 3); and Dunn is "a Partner" at Treo AM. (Resp. Br. (Dkt. No. 17) at 11-12)

[2] All references to page numbers correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

of the Fund – "managed Novalpina Capital LLP and Novalpina Capital Management International LLP ('Investment Advisors')[,] which issued investment recommendations to the Fund's [investment fund manager]." (Id.) According to Petitioner, "the [f]ounders held and continue to hold significant economic interests in the Fund through a series of entities organized under Luxembourgish law[,]" and each founder holds "one-third of Novalpina Capital Group S.à.r.l. ('Topco'), the ultimate parent corporation of the Petitioner and [other] Novalpina entities." (Id.) While "[t]he Fund's equity in its portfolio companies is held in four companies," its "most significant assets are held by NVP 103 S.à.r.l., within a subsidiary holding company formerly called Novalpina Capital Partners I Luxco S.à.r.l. ('Master Luxco')." (Id. ¶ 12) Petitioner is a shareholder of Master Luxco. (Id.)

The Fund initially had three limited partners: (1) Petitioner's owner, Novalpina Capital Partners I Group GP S.à.r.l (which itself is a wholly owned subsidiary of Topco); Novalpina Capital Partners I FP SCSp (the "Carried Interest Partner"); and Stephen Peel's family trust. (Id. ¶ 11) Over time, the Fund added more than seventy additional limited partners, but "the initial three limited partners together comprised the second-largest investment bloc." (Id. ¶ 13) The Fund's investments included "one of Europe's largest licensed casino and gambling enterprises, a leading French specialty pharmaceutical company, and . . . the NSO Group, maker of the controversial software Pegasus." (Id.) The French pharmaceutical company – Laboratoire XO, was purchased by the Fund in November 2020 for €190 million. (July 21, 2023 Plochocki Decl., Ex. A (Boorer Article) (Dkt. No. 24-1) at 2-3)

The Fund is governed by a Limited Partnership Agreement. (Jan. 27, 2023 Thieltgen Decl. (Dkt. No. 5) ¶ 25) The Limited Partnership Agreement provides for a Limited Partner Advisory Committee. (See id.) At all relevant times, Michael Langdon was the

chairman of the Fund's Limited Partner Advisory Committee.  (Id. ¶ 5)  Langdon is also "the

Director of Private Markets in the Oregon State Treasury Investment Division, where he

recommends investments in private equity to be made on behalf of the Oregon Public Employees

Retirement Fund."  (Id. ¶ 4)

The Limited Partnership Agreement has a "no fault divorce" clause authorizing

removal of the general partner – which until July 9, 2021 was Petitioner – by the Fund's Limited

Partner Advisory Committee.  (See id. ¶¶ 25, 41)  Under the Limited Partnership Agreement – if

the entity then serving as general partner is removed as general partner – it would be entitled to

> the Priority Profit Share – a priority allocation of net income and capital proceeds [from
> the Fund] – within 20 days or the removal would not be effective.  The Carried Interest
> Partner would be owed a Removal Entitlement based on the value of the Fund on the date
> of when the "no fault" removal vote was passed, as determined by an independent valuer
> appointed by the outgoing general partner.  And the new general partner [would have] to
> buy[]out the Sponsor Commitment – the initial investment in the Fund by the original
> limited partners.

(Id. ¶ 25)  According to Petitioner, pursuant to these provisions, removal of the general partner

"could cost the Fund hundreds of millions of euros."  (Id.)

On January 10, 2021, Topco authorized a partial suspension of Peel's voting

rights in Topco after Peel allegedly "began blocking important [Fund] investment and

management decisions" in a bid "to obtain a greater share of the profits of the Fund."  (Id. ¶¶ 18-

22)  In response, Peel filed a lawsuit in Luxembourg challenging the suspension of his voting

rights.  (See id. ¶¶ 23, 31)

According to Petitioner, Peel then proposed to the Limited Partner Advisory

Committee that Petitioner be replaced – as general partner – by

> an entity controlled solely by him, enabling Peel to capture all of the management fees
> for himself.  Mr. Peel claimed to the [Limited Partner Advisory Committee] that he could
> install a new general partner without having to make the bulk of the "divorce" payments.
> He further promised the [Limited Partner Advisory Committee] that his family trust

would fund the cost of "independent" lawyers to advise the [Committee] on the replacement of [Petitioner]. He also agreed to indemnify the [members of the Limited Partner Advisory Committee] from any legal fallout and offered to take steps that would reduce the Fund's management fees to limited partners. The [Limited Partner Advisory Committee] agreed [to replace Petitioner as general partner].

(Id. ¶ 27)

On March 24, 2021, a Luxembourg appellate court temporarily stayed the January 10, 2021 resolution suspending Peel's voting rights in Topco. (Id. ¶ 31)

According to Petitioner, between April and June 2021, Peel communicated directly with Petitioner's then managers – Allen Foley, Gaëtan Dumont, and Philip Zarb Mizzi – and convinced them to "back his plan" to replace Petitioner as general partner. (Id. ¶ 32) Petitioner contends that Foley, Dumont, and Mizzi – who at that time were also members of Topco's board (see id. ¶ 33) – agreed to breach their fiduciary duties to Petitioner by "tak[ing] steps to effectively minimize and waive [Petitioner's] contractual rights . . . for the sake of Mr. Peel's takeover." (Id. ¶ 32) In exchange, Peel assured Foley, Dumont, and Mizzi that "they would continue to hold lucrative positions on many boards of directors and collect management fees." (Id.)

In a July 7, 2021 ruling, a Luxembourg appellate court ruled against Peel and reinstated Topco's resolution suspending Peel's voting rights. (Id. ¶ 33) Foley, Dumont, and Mizzi were then removed from Topco's board, and Michael Zini and Stefano Pileri were appointed to replace them. (Id.) Zini and Pileri also served as directors of Petitioner. (Id. ¶ 9) The Limited Partner Advisory Committee nonetheless scheduled a vote on the proposed "no fault divorce" – i.e., the removal of Petitioner as general partner – for July 9, 2021. (Id. ¶ 34)

"On July 8, 2021, the directors of [Petitioner] together with the four other shareholders of Master Luxco amended the articles of incorporation of Master Luxco . . . to

4

require unanimity for any shareholder resolution." (Id.) Petitioner asserts that this change was necessary because the Fund invested in "[c]ertain credit facilities" that "required continuity of control during the term of investment." (Id.) According to Petitioner, the amendment to Master Luxco's articles of incorporation "preserved the argument that the shareholder in control at the time of issuance of the credit facility retained at least a form of control and staved off a cascade of additional capital requirements, calls for repayment, and regulatory defaults." (Id.)

       "The next day, limited partners including those represented on the [Limited Partner Advisory Committee] voted on the 'no fault divorce.'" The limited partners decided that Petitioner "would be formally replaced once the prerequisites in the Limited Partnership Agreement had been satisfied." (Id. ¶ 35) According to Petitioner, the limited partners decided that "[t]he exact amount of the Sponsor Commitment and Removal Entitlement would be determined by a professional independent valuation firm appointed by [Petitioner] with the approval of the [Limited Partner Advisory Committee]" and the Fund's administrator. However, "[o]n the basis of a valuation of the Fund's assets conducted by Ernst & Young and the Fund's independent [Alternative Investment Fund Manager] . . . (in the ordinary course [of business] and not for [the purpose of] the no-fault divorce)[,] the Fund's administrator" "determined that, as of July 30, 2021, the Sponsor Commitment owed to [Petitioner] and the Carried Interest Partner would be 40,558,946 euros and the Removal Entitlement, 282,925,127 euros." (Id. ¶¶ 35-36)

       Petitioner further asserts that Michael Langdon – chairman of the Limited Partner Advisory Committee – "proposed to the [members of the Limited Partner Advisory Committee] that an associate[d entity] of Berkeley Research Group Asset Management LLC – a US consulting firm specializing in internal disputes – serve as the new general partner of the Fund."

NOAL GP – the Luxembourg affiliate of Berkeley Research Group Asset Management LLC that Langdon referred to, "was created on July 30, 2021 and nominated [as general partner] on August 6, 2021, 20 days after [Petitioner] was voted out." (Id. ¶ 38) Petitioner claims that "NOAL GP could not be appointed until the Sponsor Commitment had been acquired, which involved the independent valuation and payment" under the terms of the Limited Partnership Agreement. (Id.)

In August 2021, Peel filed an ex parte application in a Luxembourg court that had the effect of temporarily reinstating two of Petitioner's former managers – Foley, Dumont, and Mizzi – to their former positions.[3] (See id. ¶ 40) After this action by the Luxembourg court, in mid-August 2021, Foley, Dumont, and Mizzi "entered into a Transition Agreement with BRG Asset Management LLC" that authorized BRG Asset Management LLC's Luxembourg affiliate – NOAL GP – to "register[] itself" as the new general partner of the Fund as of August 27, 2021, without the required buyout of the Sponsor Commitment. (See id. ¶¶ 40-41) The Removal Entitlement also went unpaid.[4] (Id. ¶ 41)

According to Petitioner, "NOAL GP excused itself from its obligations" under the Limited Partnership Agreement to pay the Sponsor Commitment and Removal Entitlement to Petitioner and the Carried Interest Partner before Petitioner was replaced as general partner "by purporting to amend the Limited Partnership Agreement – with the support of [Foley, Dumont, and Mizzi] – to" implement new valuation principles "allow[ing] the Fund to acquire the

---

[3] The record does not disclose which two of the three former managers – Foley, Dumont, and Mizzi – were reinstated, nor does it say whether they were reinstated as (1) Topco board members, (2) managers of Petitioner, or (3) both.

[4] NOAL GP has since become a subsidiary of Treo AM. (Id. ¶ 52)

Sponsor Commitment and issue promissory notes to [Petitioner] for whatever sum was due to [Petitioner] once the valuation took place," rather than requiring payment of the Sponsor Commitment before Petitioner's formal replacement as general partner.  (See id. ¶¶ 25, 38, 42)

Petitioner further contends that while "[t]he Sponsor Commitment and Removal Entitlement were to be determined in accordance with [the] new 'valuation principles,'" and while "NOAL GP promised to make progress on agreeing to implement the [new] valuation principles and to appoint KPMG London as independent valuer to value the Fund and then pay the Sponsor Commitment and Removal Entitlement based on the value of the Fund as of August 1, 2021," "[t]he valuation never happened." (Id. ¶¶ 42-44)  Indeed, "[o]n November 9, 2021, NOAL GP stated that it was unwilling to agree to appoint any valuer because it believed that a valuation based on the agreed principles would be 'infeasible (and was always unworkable).'" (Id. ¶ 44)

In late 2022, Stanley Capital – a firm controlled by Simon Cottle, an alleged friend of Peel – acquired a majority stake in Laboratoire XO from the Fund despite (1) bidding "approximately €20 million less than the best bidder," and (2) having "to raise the capital to fund the acquisition, i.e., [having] no committed funding to make the purchase."  (See Zini Decl. (Dkt. No. 6) ¶¶ 9-13)

On September 22, 2022, NOAL GP filed a lawsuit against Petitioner, its directors Pileri and Zini, and NOAL Luxco S.à r.l. in Luxembourg (the "NOAL GP/Master Luxco Lawsuit").  (Jan. 27, 2023 Thieltgen Decl. (Dkt. No. 5) ¶ 9; see also id., Ex. 1 (NOAL GP/Master Luxco Lawsuit) (Dkt. No. 5-1))  In this lawsuit, NOAL GP accuses Petitioner of "fraudulently abus[ing] its powers as Manager of the Fund" and "promoting its personal interests . . . to the detriment of those of the Fund and its investors" by amending Master Luxco's articles of

incorporation on July 8, 2021 to require "unanimity for any decision to be taken by the

shareholders of Master Luxco, including the dismissal of . . . [then] managers [Zini and Pireli]."

(Id., Ex. 1 (NOAL GP/Master Luxco Lawsuit) (Dkt. No. 5-1) ¶¶ 11-17)

> Petitioner has filed three lawsuits in Luxembourg related to these disputes:

> The first seeks declarations that nullify the unlawful decisions made by [Foley, Dumont, and Mizzi] to appoint new directors to the board of Master Luxco and the subsequent decisions made by Master Luxco's board and those of certain subsidiaries while controlled by NOAL GP and [Foley, Dumont, and Mizzi]. The second seeks to remedy the breach of the Limited Partnership Agreement. As relief, [Petitioner] seeks either to be reinstated until the conditions of the Limited Partnership Agreement have been fulfilled, or damages in satisfaction of the conditions precedent, i.e., it wants the Novalpina entities to be paid the millions of euros owed by its terms. In a third action, to preserve the ability to collect the payment due under the [Limited Partnership Agreement], the Carried Interest Partner – represented by Petitioner – also filed attachment proceedings to enjoin the distribution of Fund assets until the Removal entitlement, which takes priority over any other distributions, is paid.

(Jan. 27, 2023 Thieltgen Decl. (Dkt. No. 5) ¶ 47)[5]

> Petitioner states that it also plans to file a civil fraud claim in Luxembourg District

Court against NOAL GP, Foley, Dumont, and Mizzi "seek[ing] restitution in the form of a

clawback of undue payments to NOAL GP[,] [Foley, Dumont, and Mizzi,] and request the court

to nullify all actions taken based on [their allegedly fraudulent acts]." (Id. ¶ 51) Although

Petitioner has not explained the nature of this claim, the Court assumes – for purposes of the

instant application – that it is in the nature of a shareholder derivative action, brought on behalf

of shareholders in the Fund, to recover payments wrongfully made to NOAL GP and the three

individuals. The "undue payments" referenced by Petitioner are not explained in any fashion.

> It also appears that – as part of the anticipated civil fraud action – Petitioner

intends to bring a claim on behalf of itself for damages that it has suffered. Once again, the

---

[5] Petitioner has not identified who the defendants are in the various actions that it has filed in Luxembourg.

nature of the anticipated claim is not clear, nor has Petitioner clearly stated who the defendants will be:

> The civil fraud claim will be based on acts undertaken by Langdon with malice and deceit, including by conspiring with Stephen Peel to effect the takeover [of the general partner position] while forcing a breach of the Limited Partnership Agreement, by bringing in a general partner with whom he had a prior relationship to help effectuate that breach, and by lying about the valuation of the Fund. The claim will also allege that [Foley, Dumont, and Mizzi] abdicated [Petitioner's] contractual rights under the [Limited Partnership Agreement] to secure lucrative board seats and management positions, which also constitutes fraud under Luxembourg law.

(Id. ¶ 49)

## II.   **THE INSTANT ACTION**

On January 27, 2023, Petitioner initiated the instant action seeking to obtain evidence for use in foreign proceedings, pursuant to 28 U.S.C. § 1782. (Dkt. No. 1) In a May 26, 2023 submission (Dkt. No. 11), Petitioner filed proposed subpoenas for Respondents Treo AM[6] – which is now the parent of NOAL GP – Finbarr O'Connor, Gavin Farrell, and Jeffrey Dunn. Petitioner alleges that "O'Connor, Farrell, and Dunn have been involved with the [Limited Partner Advisory Committee] and/or the Fund since at least July 2021, and have continued to guide NOAL GP." (Jan. 27, 2023 Thieltgen Decl. (Dkt. No. 5) ¶ 52) According to Petitioner, "O'Connor and Farrell are directors of NOAL GP[, and] Dunn was involved in the valuation to be performed by KPMG." (Id.) As noted above, O'Connor also serves as Treo AM's Chief Investment Officer (da Silva Decl. (Dkt. No. 18) ¶ 5); Farrell is Treo AM's Chief Operations Officer and Chief Compliance Officer (Farrell Decl. (Dkt. No. 21) ¶ 3); and Dunn is "a Partner" at Treo AM. (Resp. Br. (Dkt. No. 17) at 11-12) Petitioner has provided no further

---

[6] Treo AM is a Delaware corporation. (See Resp. Br. (Dkt. No. 17) at 22 (stating that Respondent Farrell "work[s] for [Treo AM,] a company incorporated in Delaware"); see also Jan. 27, 2023 Plochocki Decl., Ex. 1 (Nov. 29, 2022 Treo AM ADV Form) (Dkt. No. 4-1) at 8 (Treo AM stating in a form filed with the U.S. Securities and Exchange Commission that it is a Delaware corporation))

explanation of the involvement of these individuals in the matters that are the subject of the

Section 1782 application.

Petitioner's subpoenas seek the following documents:

1.  All Documents relating to:  a. The dispute between the founders of Novalpina (Stephen Peel, Bastian Lueken, Stefan Kowski)[;] b. The removal and/or replacement of Novalpina Capital Partners I GP S.a.r.l.; c. The appointment of BRG NOAL GP S.a.r.l. as the general partner of the Fund[;] d. The Removal Entitlement, as defined in the Limited Partnership Agreements for the Fund; e. The Sponsor Commitment, as defined in the Limited Partnership Agreements for the Fund; f. The valuation of the Fund and its portfolio companies for the purpose of paying the Removal Entitlement and Sponsor Commitment and the year-end valuation as of 31 December 2021; g. The value of NSO Group; and h. Any payments or contemplated payments from the Fund or an affiliated entity to or for the benefit of Novalpina Capital Partners GP S.a.r.l., Novalpina Capital Partners I Group GP S.a.r.l., Novalpina Capital Partners I FP SCSp, Stephen Peel, and/or the Clarendon Trust.

2.  All Documents relating to the Articles of Association of Master Luxco from July 8, 2021 to September 22, 2022.

3.  All Documents relating to the relationship between any of Michael Langdon, Finbarr O'Connor and Simon Cottle.

4.  All Documents relating to the change in control provisions of the credit facilities extended to the Fund and the Fund's affiliates, including without limitation communications with financial institutions and other lenders.

5.  All Documents relating to the bidding process to sell an interest in Laboratoire X.O. and the decision to sell Laboratoire XO to Stanley Capital Partners.

6.  All Documents relating to any payments, assets, or things of value offered, promised or given to Michael Langdon, Allen Foley, Gaëtan Dumont, Philip Zarb Mizzi, Avonova S.a.r.l, The Square Finance S.a.r.l or Alter Domus Alternative Asset Fund Administration S.a.r.l., Finbarr O'Connor, Gavin Farrell, Jeffrey Dunn, BRG NOAL GP S.a.r.l. and/or BRG Asset Management LLC in connection with:  a. the introduction of and provision of services by BRG Asset Management LLC to the Fund; b. the replacement of Novalpina Capital Partners I GP S.a.r.l. as general partner of the Fund; c. the appointment of and provision of services by BRG NOAL GP S.a.r.l as general partner of the Fund; d. the introduction of Stanley Capital Partners to the Fund; and e. any other work or service performed in connection with the Fund or the Fund's direct and indirect subsidiaries.

(May 26, 2023 Pet. Ltr., Ex. 1 (Proposed Subpoenas) (Dkt. No. 11-1) at 5-7)  Petitioner also

submitted proposed deposition subpoenas for O'Connor, Farrell, and Dunn.  (May 26, 2023 Pet.

Ltr., Ex. 2 (Proposed O'Connor Subpoena) (Dkt. No. 11-2) at 1-3; id., Ex. 3 (Proposed Farrell

Subpoena) (Dkt. No. 11-3) at 1-3; id., Ex. 4 (Proposed Dunn Subpoena) (Dkt. No. 11-4) at 1-3)

   In a June 8, 2023 order, this Court granted Petitioner's Section 1782 petition and

authorized Petitioner to "serve each of the Respondents with subpoenas and document requests

in substantially the form set forth at Docket Numbers 11-1 through 11-4."  (Dkt. No. 13 at 3)

   On June 30, 2023, Respondents moved to quash Petitioner's subpoenas.  (Resp.

Mot. (Dkt. No. 16))  On July 21, 2023, Petitioner filed an opposition brief (Pet. Opp. (Dkt. No.

22)), and on August 2, 2023, Respondents filed a reply.  (Resp. Reply (Dkt. No. 28))

## DISCUSSION

### I. LEGAL STANDARDS

   Section 1782(a) provides that

> [t]he district court of the district in which a person resides or is found may order him to
> give his testimony or statement or to produce a document or other thing for use in a
> proceeding in a foreign or international tribunal. . . . The order may be made pursuant to a
> letter rogatory issued, or request made, by a foreign or international tribunal or upon the
> application of any interested person and may direct that the testimony or statement be
> given, or the document or other thing be produced, before a person appointed by the
> court. . . . The order may prescribe the practice and procedure, which may be in whole or in
> part the practice and procedure of the foreign country or the international tribunal, for
> taking the testimony or statement or producing the document or other thing.  To the
> extent that the order does not prescribe otherwise, the testimony or statement shall be
> taken, and the document or other thing produced, in accordance with the Federal Rules of
> Civil Procedure.

28 U.S.C. § 1782(a).

   Section 1782 authorizes district courts to grant such relief only where (1) "the

person from whom discovery is sought reside[s] (or [is] found) in the district of the district court

to which the application is made"; (2) "the discovery [is] for use in a proceeding before a foreign

tribunal"; and (3) "the application [is] made by a foreign or international tribunal or 'any interested person.'" Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004) (quotation marks and citations omitted).

"'[O]nce the statutory requirements are met, a district court is free to grant discovery in its discretion.'" Id. at 83-84 (quoting In re Metallgesellschaft AG, 121 F.3d 77, 78 (2d Cir. 1997)) (alteration in Schmitz); see In re Edelman, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a) – both over whether to grant a discovery order and, if so, what limits to place on that discovery." (citing S.Rep. No. 88-1580, § 9, reprinted in 1964 U.S.C.C.A.N. at 3788)). "This discretion, however, is not boundless. Rather, . . . 'district courts must exercise their discretion under § 1782 in light of the twin aims of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."'" Schmitz, 376 F.3d at 84 (quoting In re Metallgesellschaft, 121 F.3d at 79).

In exercising their discretion, district courts should consider

(1) [w]hether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid;

(2) [t]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;

(3) [w]hether the § 1782 request conceals a[n] attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and

(4) [w]hether the subpoena contains unduly intrusive or burdensome requests.

In re Warren, No. 20 MISC. 208 (PGG), 2020 WL 6162214, at *4-5 (S.D.N.Y. Oct. 21, 2020) (citing In re Microsoft Corp., 428 F. Supp. 2d 188, 192-93 (S.D.N.Y. 2006) and Intel Corp. v.

Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004), abrogated on other grounds by In re del Valle Ruiz, 939 F.3d 520 (2d Cir. 2019)).

"A court considering a request for discovery under § 1782 must also be mindful of U.S. federal discovery procedures under Rules 26 and 45 of the Federal Rules of Civil Procedure." In re Auto-Guadeloupe Investissement S.A., No. 12 MC 221 (RPP), 2012 WL 4841945, at *4 (S.D.N.Y. Oct. 10, 2012); see In re Gushlak, No. 11 MC 218 (NGG), 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) ("Section 1782(a) mandates that discovery under the statute be produced 'in accordance with the Federal Rules of Civil Procedure.' Accordingly, the court is guided by Rules 26 and 45, which govern third-party discovery."), aff'd sub nom. Gushlak v. Gushlak, 486 F. App'x 215 (2d Cir. 2012).

"Federal Rule of Civil Procedure 26(b)(1) states, in relevant part, that '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . .'" Bridges v. Corr. Servs., No. 17-CV-2220 (NSR), 2020 WL 6899695, at *4 (S.D.N.Y. Nov. 24, 2020) (quoting Fed. R. Civ. P. 26(b)(1)). "'Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept.'" Id. (quoting Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)). However, "'[w]hile Rule 26(b)(1) provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a "fishing expedition" into actions or past wrongdoing not related to the alleged claims or defenses.'" Id. (quoting Collens v. City of New York, 222 F.R.D. 249, 253 (S.D.N.Y. 2004)).

"As . . . frequently is the case in § 1782 proceedings, leave to serve the subpoenas [here] was granted ex parte, which is appropriate because all questions with respect to the propriety of the grant of leave and with respect to the content [of] the subpoenas are available to

every subpoenaed party via a motion to quash or the defense of an application to compel

compliance with the subpoenas." In re Ex Parte Application of Porsche Automobile Holding SE

for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in

Foreign Proceedings, No. 15-MC-417 (LAK), 2016 WL 702327, at *1 n.3 (S.D.N.Y. Feb. 18,

2016).

"Federal Rule of Civil Procedure 45[(d)](3)(A)(iv) provides that a court must

quash or modify a subpoena that 'subjects a person to undue burden.'" Sanofi-Synthelabo v.

Apotex Inc., No. 02 Civ. 2255 (SHS), 2009 WL 5247497, at *3 (S.D.N.Y. Dec. 30, 2009)

(quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)), aff'd sub nom. Sanofi-Aventis v. Apotex Inc., 659 F.3d

1171 (Fed. Cir. 2011). "Whether a subpoena subjects a witness to undue burden within the

meaning of Rule 45(d)(3)(A)(iv) 'depends upon such factors as relevance . . . and the burden

imposed.'" Kirschner v. Klemons, No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y.

May 19, 2005) (quoting Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49

(S.D.N.Y.1996)) (quotation marks omitted).

"The movant . . . carr[ies] the burden of proving that a subpoena imposes an

undue burden on a witness." Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, 262

F.R.D. 293, 299 (S.D.N.Y. 2009). "Because the burden is on the party seeking to quash a

subpoena, . . . that party cannot merely assert that compliance with the subpoena would be

burdensome without setting forth the manner and extent of the burden and the probable negative

consequences of insisting on compliance. . . . [I]nconvenience alone will not justify an order to

quash a subpoena that seeks potentially relevant testimony." Kirschner, 2005 WL 1214330, at

*2 (citing Concord Boat, 169 F.R.D. at 48 and Croom v. Western Conn. State Univ., 218 F.R.D.

15, 17 (D. Conn. 2002)). "A subpoena that 'pursues material with little apparent or likely

relevance to the subject matter,' however, is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." Id. (quoting Concord Boat Corp., 169 F.R.D. at 50).

## II.    ANALYSIS

Petitioner contends that the document discovery and deposition testimony that it seeks under Section 1782 is necessary "to 1) aid its defense in [the NOAL GP/Master Luxco] action pending in the Commercial Chambers of the Luxembourg District Court, and 2) support a civil fraud claim, also to be filed in the Luxembourg District Court." (Pet. Br. (Dkt. No. 3) at 5)

Petitioner contends that Treo AM has "[d]ocuments and communications establishing the conspiracy [among NOAL GP, certain directors of the Limited Partner Advisory Committee, and Foley, Dumont, and Mizzi] to enter into agreements knowing that they lacked the legal authority to do so." According to Petitioner, discovery of these materials "will enable [it] to mount an effective defense [in the NOAL GP/Master Luxco] lawsuit" by permitting it show that "it was [Foley, Mizzi, and Dumont] who actually conspired with certain [Limited Partner Advisory Committee] directors and NOAL GP to effectively cripple [Petitioner's] rights to the Removal Entitlement and Sponsor Commitment and ratify decisions wholly contrary to the interests of the corporate entities to which they owed a fiduciary obligation," and thus Petitioner's challenged actions were necessary to protect the Fund in the face of improper action taken by parties with unclean hands. (Pet. Br. (Dkt. No. 3) at 18-19; see also Pet. Opp. (Dkt. No. 22) at 21 ("[Petitioner] is entitled to defend itself from [NOAL GP's] allegations by adducing proof that its actions were right and proper and intended to serve as a bulwark against other harm and that the plaintiff has unclean hands.")) Petitioner further represents that "Treo [AM] has non-privileged documents, communications, and information relating to . . . the fraudulent

actions of Michael Langdon, [Foley, Dumont, Mizzi], and NOAL GP" relevant to Petitioner's prospective civil fraud claim.  (Pet. Br. (Dkt. No. 3) at 21)

Petitioner further contends that O'Connor, Farrell, and Dunn also have evidence relevant to the NOAL GP/Master Luxco litigation and Petitioner's prospective civil fraud claim, because (1) "[e]ach has been involved with the [Limited Partner Advisory Committee] and/or the Fund since at least July 2021, and has continued to guide NOAL GP, now organized under the parent corporation of Treo [AM];" (2) "each of the Respondents will have had extensive contact with [Foley, Dumont, and Mizzi] and lenders to Master Luxco's subsidiaries during the relevant time period"; and (3) "[e]ach Respondent will also have information concerning NOAL GP's conspiracy to evade payment of the Removal Entitlement and Sponsor Commitment, and deceptive acts taken in connection therewith."  (Id.)

Petitioner also contends that its application meets the three statutory requirements set forth in Section 1782 because (1) each Respondent resides or is found in New York[7]; (2) the discovery it seeks is relevant and "for use" in proceedings in Luxembourg – the pending NOAL GP/Master Luxco Lawsuit and Petitioner's contemplated civil fraud action; and (3) Petitioner is an "interested person," given that it is a defendant in the NOAL GP/Master Luxco Lawsuit and a prospective plaintiff in its contemplated civil fraud suit.  (Id. at 22-25)

According to Petitioner, the discretionary factors under Section 1782 also weigh in its favor, because (1) the discovery sought is beyond the reach of the Luxembourg courts, given that Respondents are not parties to the pending Master Luxco/NOAL GP Lawsuit and do

---

[7]  According to Petitioner, Treo AM conducts business from an office in this District, and has made regulatory filings listing a New York address, while Dunn, O'Connor, and Farrell have provided Treo AM's New York address as their address in certain Luxembourg court filings. (Id. at 22-23)

not maintain a presence in Luxembourg; (2) there is no reason to believe that Luxembourg courts would reject evidence obtained pursuant to Section 1782, given that Luxembourg courts are generally receptive to evidence obtained with the aid of other countries; (3) Petitioner's application cannot be viewed as an attempt to circumvent Luxembourg's law, rules, or public policy, given that Luxembourg does not preclude the disclosure of the documents and deposition testimony sought here, and that disclosure of such evidence does not violate any public policy of Luxembourg; and (4) Petitioner's discovery requests are not unduly intrusive or burdensome given that (a) the documents sought concern specifically identified issues and cover a time period of only two years, (b) the documentary evidence is likely stored electronically and thus easily searchable, and (c) the deposition testimony Petitioner seeks is similarly limited in scope. (Id. at 25-30)

Respondents argue, however, that Petitioner's subpoenas should be quashed, because Petitioner's "[a]pplication fails under both the statutory and discretionary factors applicable to § 1782 applications." (Resp. Br. (Dkt. No. 17) at 8)  In the alternative, Respondents urge this Court to (1) narrow the scope of the discovery that is sought, "most of which is wholly irrelevant to issues in dispute in the Luxembourg litigation cited by Petitioner"; (2) require Petitioner to bear the cost of "the substantial and burdensome discovery it seeks"; and (3) grant Respondents leave to seek reciprocal discovery from Petitioner. (Id. at 9)

A.    **Whether the Statutory Factors Are Satisfied**

As to the statutory factors under Section 1782, the parties dispute only whether (1) Respondent Farrell "resides or is found" in this District; and (2) the discovery sought is "for use" in either (a) the NOAL GP/Master Luxco Lawsuit, concerning the July 8, 2021 amendment

to Master Luxco's articles of incorporation; or (b) Petitioner's anticipated civil fraud lawsuit in Luxembourg.[8]

### 1.    Whether Farrell Resides or Is Found in this District

In arguing that Farrell is found in New York for purposes of Section 1782, Petitioner asserts that "the Second Circuit [has] held that the 'resides or is found' language of § 1782 'extends to the limits of personal jurisdiction consistent with due process.'" (Pet. Br. (Dkt. No. 3) at 23) (quoting In re del Valle Ruiz, 939 F.3d 520, 528 (2d Cir. 2019)) According to Petitioner, "Farrell's work for Treo AM created a substantial connection to New York sufficient to support the exercise of specific personal jurisdiction" (Pet. Opp. (Dkt. No. 22) at 18), citing the fact that Farrell listed "New York as his professional address on an official Luxembourg government document." (Id.) (citing Jan. 27, 2023 Plochocki Decl., Ex. 3 (BRG NOAL GP Trade & Companies Register of Luxembourg) (Dkt. No. 4-3))

Petitioner further argues that "Farrell is Treo AM's Chief Compliance Officer," and "[Respondents'] Motion [to Quash] indicates that [he] worked closely with Mr. O'Connor and others at Treo AM, inextricably binding him to the New[]York based team." (Id. at 19)[9] In this regard, Petitioner points out that (1) "Treo AM is registered to conduct business in New York and is also a registered investment adviser with the Securities and Exchange Commission" (id. at 18-19) (citing Jan. 27, 2023 Plochocki Decl., Ex. 1 (Nov. 29, 2022 Treo AM ADV Form) (Dkt. No. 4-1)); and (2) Farrell states in his declaration "that he has traveled to New York 'in

---

[8] "Respondents do not dispute that Petitioner has established that Treo AM, O'Connor [and] Dunn are found within the Southern District of New York. Nor do Respondents dispute that Petitioner is an 'interested person' for purposes of Section 1782." (Resp. Br. (Dkt. No. 17) at 20 n.8)

[9] Petitioner does not cite the pages in Respondents' motion papers that supposedly demonstrate that Farrell worked closely with O'Connor and others at Treo AM.

connection with [his] duties and responsibilities <u>for Treo</u> [AM].'" (<u>Id.</u> at 19) (emphasis in

original) (quoting Farrell Decl. (Dkt. No. 21) ¶ 6)  According to Petitioner, "[t]hese contacts with

the district are more than enough to 'find' Mr. Farrell here for the purposes of this Petition."

(<u>Id.</u>)

        Respondents counter that "Petitioner has not established that Farrell 'resides or is

found' in the Southern District of New York." (Resp. Br. (Dkt. No. 17) at 20)  According to

Respondents, "Farrell is a full-time resident of Ireland whose sole asserted contact with the

District is that Treo AM's New York mailing address was provided . . . as part of certain

Luxembourg filings made by Treo AM." (<u>Id.</u>) (citing Jan. 27, 2023 Plochocki Decl., Ex. 3 (BRG

NOAL GP Trade & Companies Register of Luxembourg) (Dkt. No. 4-3))  Accordingly,

Petitioner has not met its "burden to establish case-specific 'contacts with the Southern

District . . . []sufficient to subject [Farrell] to the district court's personal jurisdiction,' which

typically requires 'in-state activity that gave rise to the episode-in-suit.'" (<u>Id.</u> at 21) (quoting <u>In</u>

<u>re del Valle Ruiz</u>, 939 F.3d 520, 523-24, 530 (2d Cir. 2019) (internal citation omitted)  In support

of this argument, Respondents cite <u>In re Microsoft Corp.</u>, in which a partner in a Manhattan law

firm (and member of the New York bar) was not "found" in this District for purposes of Section

1782, because he was a Dutch national who resided in Brussels and worked fulltime in the firm's

Brussels office. (<u>Id.</u>) (citing <u>In re Microsoft Corp.</u>, 428 F. Supp. 2d 188, 193 (S.D.N.Y. 2006),

<u>abrogated on other grounds by In re del Valle Ruiz</u>, 939 F.3d 520 (2d Cir. 2019))

       **a.**    <u>**Applicable Law**</u>

        The Second Circuit has instructed that "[Section] 1782's 'resides or is found'

language extends to the limits of personal jurisdiction consistent with due process[,]" <u>In re del</u>

<u>Valle Ruiz</u>, 939 F.3d 520, 528 (2d Cir. 2019), and that "'[t]he touchstone due process principle

has been that, before a court may exercise jurisdiction over a person or an organization, . . . that person or entity must have sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."'" Id. at 528-29 (quoting Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 134 (2d Cir. 2014)).

"General jurisdiction over an individual comports with due process in the forum where he is 'at home,' meaning the place of 'domicile.'" Reich v. Lopez, 858 F.3d 55, 63 (2d Cir. 2017) (quoting Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 225 (2d Cir. 2014) (per curiam)). Here, Petitioner does not contend that this Court has general jurisdiction over Farrell. Petitioner instead contends that this Court has specific personal jurisdiction over him. (Pet. Opp. (Dkt. No. 22) at 18)

"'Specific jurisdiction'" "'permits adjudicatory authority only over issues that "aris[e] out of or relat[e] to [a party's] contacts with the forum."'" In re del Valle Ruiz, 939 F.3d at 529 (quoting Gucci Am., Inc., 768 F.3d at 134) (some alterations in Gucci Am., Inc.). "[T]he two-step analysis" for the specific jurisdiction determination "is well established: First, the court must determine [whether] the [litigant] has 'purposefully directed his activities at . . . the forum and the litigation . . . arise[s] out of or relate[s] to those activities.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "Second, the court must 'determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" Id. (quoting Burger King Corp., 471 U.S. at 476). "Relevant factors at this second step of the analysis may include: '(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief . . . .'" Licci ex rel. Licci v. Lebanese

Canadian Bank, SAL, 732 F.3d 161, 170 (2d Cir. 2013) (quoting Metro. Life Ins. Co. v.

Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996)).

      **b.**      **Analysis**

      Here, Petitioner argues that "[w]here corporate officers of entities operating in

New York themselves transact business in New York, exercise of jurisdiction over them

comports with due process." (Pet. Opp. (Dkt. No. 22) at 16-17)  In this regard, Petitioner asserts

that Farrell "has purposefully conducted activities in and through this [D]istrict," and has

"admit[ted] that he has traveled to New York 'in connection with [his] duties and responsibilities

for Treo [AM].'"  (Id. at 18-19) (quoting Farrell Decl. (Dkt. No. 21) ¶ 6) (emphasis added in Pet.

Opp.)  Petitioner further contends that, during Farrell's trips to New York, he "[n]o doubt . . . had

communications relating to the topics that will be the subject of his deposition, as identified in

the Memorandum of Law:  NOAL GP's and [Foley, Dumont, and Mizzi's] 'conspiracy to evade

payment of the Removal Entitlement and Sponsor Commitment,' as well as discussions with

lenders to the Fund entities held in Master Luxco, and the sale of [Laboratoire XO]."  (Id. at 19)

(quoting Pet. Br. (Dkt. No. 3) at 21)

      But Petitioner's assertions regarding what Farrell "no doubt" discussed while in

New York is utter speculation, and the exercise of personal jurisdiction cannot be premised

merely on speculation about what a party did while in New York.  See Hai Yang Liu v. 88

Harborview Realty, LLC, 5 F. Supp. 3d 443, 449 (S.D.N.Y. 2014) ("'Federal jurisdiction cannot

be based on surmise or guesswork.'  It 'cannot simply be assumed, as [plaintiff] wishes, with

discovery then permitted in hopes that a proper basis for jurisdiction can later be ascertained.'")

(internal citations omitted) (quoting Salzstein v. Bekins Van Lines, Inc., 747 F. Supp. 1281, 1283

(N.D. Ill. 1990) and then Sinclair v. TubeSockTedD, 596 F. Supp. 2d 128, 134 (D.D.C. 2009)).

The cases cited by Petitioner are not to the contrary. See, e.g., In re Steinmetz, No. 20-MC-212 (AJN), 2022 WL 170851, at *4 (S.D.N.Y. Jan. 19, 2022) (finding that first step of specific jurisdiction analysis was satisfied where respondents participated in "a series of meetings that took place . . . in New York[,]" those "meetings related to the Simandou mining rights, and those rights are at the core of the UK Litigation and, by consequence, the present [Section 1782] application."); Retail Software Servs., Inc. v. Lashlee, 854 F.2d 18, 23-24 (2d Cir. 1988) (exercise of personal jurisdiction was proper where defendants who sold seven franchises to be operated in New York had received notice that they would be individually liable in any suit arising under New York's Franchise Sales Act); People v. JUUL Labs, Inc., 212 A.D.3d 414, 415 (1st Dep't 2023) (in consumer fraud action premised on defendants' marketing and sale of electronic cigarettes, the first step in the specific jurisdiction analysis was satisfied where defendants traveled to New York for investment meetings and launch parties, and were involved in marketing strategies that included "months of events in New York; . . . advertising on billboards in Times Square; [and] hosting in-store product samplings at New York vape shops and social events"); Al Thani v. Hanke, No. 20 CIV. 4765 (JPC), 2021 WL 1895033, at *6 (S.D.N.Y. May 11, 2021) (personal jurisdiction existed over defendant who "traveled to New York numerous times to negotiate and execute" contracts at issue); Licci ex rel. Licci, 732 F.3d at 168 (personal jurisdiction existed over defendants who used New York correspondent bank account dozens of times to facilitate support of terrorism).

Petitioner argues, however, that "[w]here an individual creates a 'substantial connection with the forum state' and has created 'continuing obligations between [a party to the litigation] and residents of the forum[,]' the exercise of jurisdiction is consistent with due process," including "[w]here an individual does not reside in a district, but works for a company

located in that district." (Pet. Opp. (Dkt. No. 22) at 17-18) (quoting In re Polygon Glob. Partners LLP, No. 21 MISC. 364 (ER), 2021 WL 2117397, at *5 (S.D.N.Y. May 25, 2021))  In this regard, Petitioner notes that Farrell has "identifie[d] New York as his professional address on an official Luxembourg government document" and performs "his regulated work" as Treo AM's Chief Compliance Officer "under the umbrella of Treo AM's license," which is "registered to conduct business in New York and is also a registered investment adviser with the Securities and Exchange Commission." (Id. at 18-19)  According to Petitioner – as a result of this conduct – Farrell has publicly held himself out as associated with a New York office and has worked in close association with persons and entities in New York, thus creating a "'substantial connection with the forum state'" and "'continuing obligations between [Treo AM] and residents of the forum'" sufficient for this Court to exercise personal jurisdiction over him. (Id.) (quoting In re Polygon Glob. Partners LLP, 2021 WL 2117397, at *5)

In re Polygon Glob. Partners LLP, 2021 WL 2117397 – the sole case cited by Petitioner concerning the specific personal jurisdiction issue – is not on point.  In that Section 1782 proceeding, petitioner was challenging a corporate takeover in a Spanish court.  Petitioner alleged that respondents were involved in analyzing and formulating the takeover bid as part of their work responsibilities at takeover firm KKR's New York offices.  In re Polygon Glob. Partners LLP, No. 21 MISC. 364 (ER), 2021 WL 2117397, at *5 (S.D.N.Y. May 25, 2021). While respondents did not dispute that they "are associated with KKR's New York offices," they asserted that – as a result of the COVID-19 pandemic – they stopped commuting into Manhattan in March 2020.  Id.  The court concluded, however, that "any work [respondents] would have performed relating to the transaction including, for example, the analysis of due diligence

materials – would have been inextricably tied to their employment as part of [the] New York-based team, even if it was not performed while they were physically present in this District." Id.

There is no such proof here. Petitioner has not, for example, proffered facts showing that Farrell worked with a New York-based team on funding related to Master Luxco or on the sale of Laboratoire XO. And, as noted above, Petitioner's assertion that Farrell has knowledge of facts relevant to the NOAL GP/Master Luxco Lawsuit and Petitioner's anticipated civil fraud action in Luxembourg – because he had "extensive contact with [Foley, Dumont, and Mizzi] and lenders to Master Luxco's subsidiaries during the relevant time period," and has "information concerning NOAL GP's conspiracy to evade payment of the Removal Entitlement and Sponsor Commitment, and deceptive acts taken in connection therewith" – is mere speculation. The conclusory allegations that Farrell is a manager at Treo AM (Jan. 27, 2023 Plochocki Decl. (Dkt. No. 4) ¶ 5), has "been involved with the [Limited Partner Advisory Committee] and/or the Fund since at least July 2021, [has] continued to guide NOAL GP, now organized under the parent corporation of Treo Asset Management LLC[,] . . . . [and is a] director[] of NOAL GP" (Jan. 27, 2023 Thieltgen Decl. (Dkt. No. 5) ¶ 52) are not sufficient.

In sum, Petitioner has not proffered facts sufficient to demonstrate that Farrell was directly involved in acts relevant to the NOAL GP/Master Luxco Lawsuit or Petitioner's prospective civil fraud action in Luxembourg, or that any such hypothetical involvement was inextricably tied to his employment at the New York-based Treo AM rather than NOAL GP. Creative Photographers, Inc. v. Grupo Televisa, S.A.B., No. 23-CV-7106 (LJL), 2024 WL 1533189, at *3 (S.D.N.Y. Apr. 8, 2024) ("[T]he prima facie showing required to establish personal jurisdiction prior to an evidentiary hearing still must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. While the Court

construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, the Court will not

draw argumentative inferences in the plaintiff's favor.") (quotation marks and citations omitted).

Indeed, there has been no showing that Farrell's meetings in New York had anything to do with

(1) the alleged failure to make the payments necessary under the Removal Entitlement and

Sponsor Commitment; (2) discussions with lenders to Master Luxco; or (3) the sale of

Laboratoire XO. Accordingly, this Court lacks personal jurisdiction over Farrell, and the motion

to quash will be granted to the extent that Petitioner seeks discovery from him.

### 2.    Whether the Requested Discovery is "For Use" in a Foreign Proceeding

As to Treo AM, O'Connor, and Dunn, this Court must go on to consider whether

"there is actually a foreign proceeding" or an anticipated foreign proceeding, and, if so, "whether

[that] foreign proceeding is adjudicative in nature." Euromepa, S.A. v. R. Esmerian, Inc., 154

F.3d 24, 27 (2d Cir. 1998). If there is an actual or anticipated foreign proceeding, this Court

must also consider whether the discovery sought by Petitioner may "be employed with some

advantage or serve some use" in that proceeding. Mees v. Buiter, 793 F.3d 291, 298 (2d Cir.

2015).

As discussed above, Petitioner's subpoenas seek the following documents:

1. All Documents relating to: a. The dispute between the founders of Novalpina
   (Stephen Peel, Bastian Lueken, Stefan Kowski)[;] b. The removal and/or replacement
   of Novalpina Capital Partners I GP S.a.r.l.; c. The appointment of BRG NOAL GP
   S.a.r.l. as the general partner of the Fund[;] d. The Removal Entitlement, as defined in
   the Limited Partnership Agreements for the Fund; e. The Sponsor Commitment, as
   defined in the Limited Partnership Agreements for the Fund; f. The valuation of the
   Fund and its portfolio companies for the purpose of paying the Removal Entitlement
   and Sponsor Commitment and the year-end valuation as of 31 December 2021; g. The
   value of NSO Group; and h. Any payments or contemplated payments from the Fund
   or an affiliated entity to or for the benefit of Novalpina Capital Partners GP S.a.r.l.,
   Novalpina Capital Partners I Group GP S.a.r.l., Novalpina Capital Partners I FP
   SCSp, Stephen Peel, and/or the Clarendon Trust.

2. All Documents relating to the Articles of Association of Master Luxco from July 8, 2021 to September 22, 2022.

3. All Documents relating to the relationship between any of Michael Langdon, Finbarr O'Connor and Simon Cottle.

4. All Documents relating to the change in control provisions of the credit facilities extended to the Fund and the Fund's affiliates, including without limitation communications with financial institutions and other lenders.

5. All Documents relating to the bidding process to sell an interest in Laboratoire X.O. and the decision to sell Laboratoire XO to Stanley Capital Partners.

6. All Documents relating to any payments, assets, or things of value offered, promised or given to Michael Langdon, Allen Foley, Gaëtan Dumont, Philip Zarb Mizzi, Avonova S.a.r.l, The Square Finance S.a.r.l or Alter Domus Alternative Asset Fund Administration S.a.r.l., Finbarr O'Connor, Gavin Farrell, Jeffrey Dunn, BRG NOAL GP S.a.r.l. and/or BRG Asset Management LLC in connection with: a. the introduction of and provision of services by BRG Asset Management LLC to the Fund; b. the replacement of Novalpina Capital Partners I GP S.a.r.l. as general partner of the Fund; c. the appointment of and provision of services by BRG NOAL GP S.a.r.l as general partner of the Fund; d. the introduction of Stanley Capital Partners to the Fund; and e. any other work or service performed in connection with the Fund or the Fund's direct and indirect subsidiaries.

(May 26, 2023 Pet. Ltr., Ex. 1 (Proposed Subpoenas) (Dkt. No. 11-1) at 5-7)

### a.    Whether the NOAL GP/Master Luxco Lawsuit Is a Qualifying Foreign Proceeding

In the NOAL GP/Master Luxco Lawsuit, NOAL GP alleges that "[Petitioner] has, with the help of [its managers] Mr. Zini and Mr. Pileri, fraudulently abused its powers as Manager of the Fund" in amending Master Luxco's articles of incorporation on July 8, 2021, and acted ultra vires under Luxembourg law in doing so.  (See Jan. 27, 2023 Thieltgen Decl., Ex. 1 (NOAL GP/Master Luxco Lawsuit) (Dkt. No. 5-1) ¶¶ 11-23, 65-98) (emphasis omitted) According to Petitioner, in the NOAL GP/Master Luxco Lawsuit, NOAL GP alleges that Petitioner, Zini, and Pileri "acted in a deliberate and particularly devious manner," because they "did not bother to inform the [Limited Partner Advisory Committee of the July 8, 2021

amendment] in accordance with . . . the [Limited Partnership Agreement], when [Petitioner] was clearly in a situation of conflict of interest." (Id. ¶ 18) Furthermore, "[w]hile the resolution [amending the Master Luxco articles of incorporation] was adopted on July 8, 2021, it was not published until July 23, 2021. Finally, Mr. Pileri and Mr. Zini did not adopt a resolution specifically amending the majority rules within the general meeting," but instead "proceeded with a so-called 'complete design of the corporate bylaws' without highlighting the changes made, which made them difficult to detect." (Id.) (emphasis omitted)

In connection with the amendment to the articles of incorporation, NOAL GP further alleges that the

> amendment to the corporate bylaws is clearly the result of fraud, if not abuse, on the part of [Petitioner]. The goal of [Petitioner] was both to lock down the management of Master Luxco while granting itself a blocking minority equivalent to a veto right at the Master Luxco level in such a way as to be able to weigh, even after its revocation, on the management of the companies held by the Fund. [Petitioner] thus obtained an exorbitant advantage compared to the derisory shareholding it held in the amount of 0.85% in the share capital of Master Luxco. Clearly, there was no legitimate reason, commercial or otherwise, justifying the introduction of the right of veto by [Pileri and Zini]. Not only was this right of veto of no interest in Master Luxco, it was in total contradiction with the interests of Master Luxco.

(Id. ¶ 20)

In contending that Respondents' motion to quash its subpoenas should be denied, Petitioner asserts that "Respondents have information that will show that the amendment [to Master Luxco's articles of incorporation] served its intended purpose of protecting the Fund," and "was not fraudulent or abusive, or, as alleged 'for the exclusive purpose of promoting [Petitioner's] personal interests' but [was instead] a good faith act undertaken within the scope of [Petitioner's] fiduciary duty to the Fund." (Pet. Opp. (Dkt. No. 22) at 21) (citing Jan. 27, 2023 Thieltgen Decl., Ex. 1 (NOAL GP/Master Luxco Lawsuit) (Dkt. No. 5-1) ¶ 11) Petitioner also contends that NOAL GP waited to commence the NOAL GP/Master Luxco Lawsuit until the

amendment to the articles of incorporation "was no longer needed to negotiate issues [with lenders] over the Fund's violation of the change in control provisions in the various credit facilities and loan agreements with the Fund's portfolio companies." According to Petitioner, "problems relating to the change in control provisions did in fact arise," showing "[t]he actual utility of the amendment [to the articles of incorporation]." (Id.) Petitioner further asserts that its efforts to demonstrate "that its actions were right and proper and intended to serve as a bulwark against other harm[,] and that [NOAL GP] has unclean hands[,]" will be assisted by documents and information in Respondents' possession – particularly materials relevant to the fourteen-month gap between NOAL GP learning of the disputed amendment and its initiation of the NOAL GP/Master Luxco Lawsuit – a delay that Petitioner contends shows that NOAL GP's fraud claims are not made in good faith. (Id.) (citing Jan. 27, 2023 Thieltgen Decl. (Dkt. No. 5) ¶ 9; id., Ex. 1 (NOAL GP/Master Luxco Lawsuit) (Dkt. No. 5-1) ¶ 11)

While Respondents do not dispute that the NOAL GP/Master Luxco Lawsuit constitutes a foreign proceeding under Section 1782, they contend that "none of the requested material potentially obtainable from Respondents is relevant to [that action]," because that case "turns on whether Petitioner's enactment of the [amendment to Master Luxco's articles of incorporation] on July 8, 2021 was a lawful exercise of its authority." (Resp. Br. (Dkt. No. 17) at 22-23) (citing da Silva Decl. (Dkt No. 18) ¶ 39) According to Respondents, they "had nothing to do with enactment of the [amendment to the Master Luxco articles of incorporation,]" and "they had no involvement in or affiliation with the Fund as of July 8, 2021." (Id. at 23) Given these circumstances, Respondents argue that Petitioner has not adequately explained "how or why any of its document requests, none of which facially relate to the [amendment at issue] at all, would be relevant." (Id.) (emphasis in original) Accordingly, the "for use" in a foreign proceeding

element is not met, because there is no reason to believe that Respondents have documents or information relevant to the issues regarding the amendment of the Master Luxco articles of incorporation.

Petitioner responds that NOAL GP's claims in the NOAL GP/Master Luxco Lawsuit are "not limited to the amendment [of Master Luxco's articles of incorporation on] July 8, 2021." (Pet. Opp. (Dkt. No. 22) at 20)  A review of NOAL GP's complaint in that action bears out Petitioner's assertion.

In its complaint, NOAL GP describes the "[o]rigin of the [d]ispute" as beginning "[a]round the end of 2020," when founders Kowski and Lueken "attempted to remove Mr. Peel from [Topco's] management[,]" and "appoint new managers" – Zini and Pileri – who were allegedly willing to take "several highly detrimental actions against the Fund for the exclusive purpose of promoting [Petitioner's] personal interests and those of the persons controlling this entity." (January 27, 2023 Thieltgen Decl., Ex. 1 (NOAL GP/Master Luxco Lawsuit) (Dkt. No. 5-1) ¶¶ 1, 8, 11-13)  NOAL GP further alleges that Petitioner's role as general partner "was [properly] revoked on July 9, 2021, by the [Fund's] Investors," and "NOAL [GP] was appointed Manager of the Fund" "[o]n August 6, 2021, in accordance with the [Limited Partnership Agreement] then in force." (Id. ¶¶ 24-25)  NOAL GP accepted the appointment "after ensuring . . . that the Fund would be able to proceed with the redemption of the 'Sponsor Commitment' requested by '[Petitioner,]'" and "[t]he 'Sponsor Commitment' was actually acquired on August 27, 2021, by the Fund." (Id. ¶¶ 33-34) (emphasis omitted)  And on August 27, 2021, "the Master Luxco partners, including [Petitioner], modified the composition of Master Luxco's board of directors on the proposal of [] NOAL [GP,]" which was allegedly "necessary in order for NOAL [GP] to be able to assume its function as Manager in accordance with the terms

of the [Limited Partnership Agreement]." (Id. ¶¶ 35-36)  On August 30, 2021, "NOAL [GP]

agreed to issue . . . a guarantee of payment of the 'Sponsor Commitment' price (which had been

validly acquired on August 27, 2021) in the form of a pledge[,]" and "agreed on the terms of

evaluation of the 'Removal Entitlement' and 'Sponsor Commitment.'" (Id. ¶¶ 39-41) (emphasis

omitted)

       NOAL GP goes on to allege that on February 15, 2022, Petitioner improperly

sought to render a nullity the resolutions adopted by the partners of Master Luxco, contending

that "it was not validly represented by Mr. Dumont and Mr. Foley, who signed the minutes of the

resolutions, at the general meetings having adopted these resolutions." (Id. ¶¶ 55-56)  Petitioner

also initiated a court action "in order to obtain the suspension of the effects of these resolutions."

(Id. ¶ 58)  According to NOAL GP, "[t]hrough these actions, [Petitioner] attempts to take control

of Master Luxco and hundreds of millions of euros of assets it controls since the suspension

and/or cancellation of the resolutions in question would have the effect of restoring" managers

like Zini, Pileri, and Fund founder Kowski to Master Luxco. (Id. ¶ 59)

       In sum, NOAL GP's complaint in the NOAL GP/Master Luxco Lawsuit raises a

host of issues in addition to the amendment to the Master Luxco articles of incorporation.

### i.   **Applicable Law**

       "[D]iscovery sought pursuant to § 1782 need not be necessary for the party to

prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement.  The plain

meaning of the phrase 'for use in a proceeding' indicates something that will be employed with

some advantage or serve some use in the proceeding – not necessarily something without which

the applicant could not prevail." Mees, 793 F.3d at 298.  "Indeed, such a 'necessity requirement'

would 'entail a painstaking analysis not only of the evidence already available to the applicant,

but also of the amount of evidence required to prevail in the foreign proceeding' – an inquiry

'fraught with danger' to the extent it requires the analysis and interpretation of foreign law." In re Refineria de Cartagena S.A.S., No. 23 MISC. 455 (JPC), 2024 WL 95056, at *7 (S.D.N.Y. Jan. 8, 2024) (quoting Mees, 793 F.3d at 298-99). "Still, it may be necessary for a court to determine the threshold relevance of the materials 'sought insofar as it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be "for use" in that proceeding.'" Id. (quoting Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 120 n.7 (2d Cir. 2015)). "The burden imposed on the applicant in this regard is de minimis[, however]." Id.

### ii.    **Analysis**

Petitioner has no substantive response to Respondents' assertion that they had "nothing to do with enactment of the [amendment to the Master Luxco articles of incorporation]," and "no involvement in or affiliation with the Fund as of July 8, 2021," when the articles of incorporation were amended. (Resp. Br. (Dkt. No. 17) at 23) Indeed, Petitioner concedes that NOAL GP – Treo AM's Luxembourg affiliate – only "learned of the amendment on August 26, 2021." (Pet. Opp. (Dkt. No. 22) at 21) Accordingly, Petitioner has not shown that it is reasonable to believe that Respondents have documents and information in their possession related to the enactment of the July 8, 2021 amendment.

Petitioner has likewise not sufficiently articulated why Respondents would have documents and information in their possession relevant to Petitioner's alleged "good faith" in amending the articles of incorporation, because discovery demonstrating that Petitioner had a good faith belief that amendment was necessary to protect the Fund would turn on Petitioner's knowledge as of July 8, 2021, when the articles of incorporation were amended, and before Respondents' involvement with the Fund. Petitioner's argument that Respondents might have documents and information demonstrating that "problems relating to the change in control

provisions did in fact arise" during the 14-month gap between NOAL GP learning of the amendment on August 26, 2021 and the filing of the NOAL GP/Master Luxco Lawsuit (see id.) is not persuasive, because Petitioner cannot demonstrate its good faith on July 8, 2021, by citing events that happened months later. Moreover, Petitioner's good faith turns on the information available to Petitioner at the time of the amendment, and not information that was available to other parties either at the time of the amendment or months later.

Accordingly, Petitioner has not met its burden as to the discovery sought in Request 2 (documents relating to the articles of association of Master Luxco from July 8, 2021 to September 22, 2022) or Request 4 (documents relating to the change in control provisions of the credit facilities extended to the Fund).

As discussed above, however, NOAL GP's claims in the NOAL GP/Master Luxco Lawsuit are not limited to the amendment of Master Luxco's articles of incorporation on July 8, 2021. NOAL GP instead alleges a much broader scheme of fraud and self-dealing. And as described by Petitioner, its "unclean hands" defense to NOAL GP's claims of fraud and self-dealing implicates NOAL GP's alleged corruption of Foley, Dumont, and Mizzi; the replacement of Petitioner as general partner; the appointment of NOAL GP as general partner; and the failure to pay the Removal Entitlement and Sponsor Commitment to Petitioner.

The Court concludes that Petitioner has met its de minimis burden as to the discovery it seeks from Respondents concerning Petitioner's "unclean hands" defense in the NOAL GP/Master Luxco Lawsuit, because it is plausible that Respondents have documents and information relevant to demonstrating NOAL GP's alleged bad faith, and that such discovery could "be employed with some advantage or serve some use" in the NOAL GP/Master Luxco Lawsuit in connection with Petitioner's "unclean hands" defense. See Mees, 793 F.3d at 299

("[u]nder § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success").

As to the relevant time period, Petitioner contends that the alleged conspirators' malfeasance – i.e., the alleged "unclean hands" conduct – began in December 2020 with Peel's efforts to "block[] important [Fund] investments and management decisions" in a bid "to obtain a greater share of the profits of the Fund," and continued through the alleged corruption of Foley, Dumont, and Mizzi in the spring of 2021; the replacement of Petitioner as general partner with NOAL GP in July 2021; and the ongoing failure to "pay the Sponsor Commitment and Removal Entitlement." (Jan. 27, 2023 Thieltgen Decl. (Dkt. No. 5) ¶¶ 18-44)

The Court concludes that Petitioner has met its burden as to the discovery sought in Request 1 (documents relating to the dispute between the founders of the Fund, the removal of Petitioner as general partner, the appointment of NOAL GP as general partner, the Removal Entitlement, the Sponsor Commitment, the valuation of the Fund and the year-end valuation as of 31 December 2021, the value of NSO Group (one of the Fund's major holdings), and any payments or contemplated payments from the Fund to or for the benefits of certain corporate entities) and Requests 6(a), 6(b), 6(c), and 6(e) (documents relating to payments, assets, or things of value offered, promised, or given to Langdon, Foley, Dumont, Mizzi, O'Connor, Farrell, Dunn, and certain corporate entities in connection with the introduction of and provision of services by BRG Asset Management, the replacement of Petitioner, the appointment of NOAL GP as general partner, and any other work or service performed in connection with the Fund or Fund subsidiaries). The Court further concludes that the relevant time period for production is December 1, 2020 through January 27, 2023, when Petitioner filed its Section 1782 application. (May 26, 2023 Pet. Ltr., Ex. 1 (Proposed Subpoenas) (Dkt. No. 11-1) at 5-7)

Petitioner has not argued that issues outside of those raised in the NOAL GP/Master Luxco complaint are otherwise relevant to its unclean hands defense in that action. (See Pet. Opp. (Dkt. No. 22) at 20-21)  For example, the decision to sell Laboratoire XO to Stanley Capital – a firm controlled by Cottle – is not raised in the NOAL GP/Master Luxco complaint (see Jan. 27, 2023 Thieltgen Decl., Ex. 1 (NOAL GP/Master Luxco Lawsuit) (Dkt. No. 5-1)), and Petitioner does not argue that discovery related to the decision to sell Laboratoire XO is nonetheless relevant to its unclean hands defense in the NOAL GP/Master Luxco Lawsuit. (See Pet. Opp. (Dkt. No. 22) at 20-21)  Indeed, Petitioner states that the "facts relating to the sale of [Laboratoire XO] to Stanley Capital Partners . . . pertain[] to [its] prospective [civil] fraud action, not the [NOAL GP/]Master Luxco litigation."  (Id. at 40)  Accordingly, Petitioner has not met its burden as to the discovery sought in Request 3 (documents relating to the relationship between Langdon, O'Connor, and Cottle); Request 5 (documents relating to the bidding process to sell an interest in Laboratoire XO and the decision to sell Laboratoire XO to Stanley Capital Partners); and Request 6(d) (documents relating to payments, assets, or things of value offered, promised, or given to Langdon, Foley, Dumont, Mizzi, O'Connor, Farrell, Dunn, and the corporate entities listed in the subpoenas in connection with the introduction of Stanley Capital Partners to the Fund)  (May 26, 2023 Pet. Ltr., Ex. 1 (Proposed Subpoenas) (Dkt. No. 11-1) at 6-7), because Petitioner has not demonstrated that the discovery it seeks in Requests 3, 5, and 6(d) could "be employed with some advantage or serve some use" as to Petitioner's proposed "unclean hands" defense in the NOAL GP/Master Luxco Lawsuit.

As a result, to the extent that Petitioner's Requests **2**, 3, **4**, 5, and 6(d) are premised on a need for discovery related to the NOAL GP/Master Luxco Lawsuit, Respondents' motion to quash will be granted.

**b.**    **Petitioner's Prospective Civil Fraud Claim in Luxembourg**

Petitioner contends that its contemplated Luxembourg civil fraud action qualifies

as a "foreign proceeding" under Section 1782 because "[i]t is a proper use of § 1782 to seek

evidence both to plead and prove a claim" (Pet. Opp. (Dkt. No. 22) at 23) (citing Mees, 793 F.3d

at 299), and it has made "a sufficiently concrete showing" under the statute "by articulating the

theory of the claim and a sworn statement attesting to the intent to litigate." (Id.) (citing In re

Top Matrix Holdings Ltd., No. 18 MISC. 465 (ER), 2020 WL 248716, at *5 (S.D.N.Y. Jan.

16,2020) and In re Hornbeam Corp., 722 F. App'x 7, 10 (2d Cir. 2018))  In this regard, Petitioner

notes that it has retained Luxembourg counsel (id.), who has attested that Petitioner intends to

file a "civil fraud claim in the Luxembourg District Court and seek restitution in the form of a

clawback of undue payments to NOAL GP and [Foley, Dumont and Mizzi – Petitioner's former

managers] and request the court to nullify all actions taken based on this fraud." (Jan. 27, 2023

Thieltgen Decl. (Dkt. No. 5) ¶ 51)

As outlined above, Petitioner's counsel represents that Petitioner's civil fraud

claim

> will be based on acts undertaken by Langdon with malice and deceit, including by
> conspiring with Stephen Peel to effect the takeover [of the general partner position] while
> forcing a breach of the Limited Partnership Agreement, by bringing in a general partner
> with whom he had a prior relationship to help effectuate that breach, and by lying about
> the valuation of the Fund.  The claim will also allege that [Foley, Dumont, and Mizzi]
> abdicated [Petitioner's] contractual rights under the [Limited Partnership Agreement] to
> secure lucrative board seats and management positions, which also constitutes fraud
> under Luxembourg law.

(Id. ¶ 49)

Petitioner has proffered the following factual allegations in support of its

anticipated civil fraud claim:  beginning "[i]n December 2020, Peel secretly contacted Langdon,

seeking his support" in conspiring to "replace [Petitioner as general partner] with an entity

controlled solely by [Peel]," because "Peel sought to obtain a greater share of the profits of the Fund" and "capture all of the management fees for himself." (See id. ¶¶ 18-27) Peel subsequently "convinced [Foley, Dumont, and Mizzi]" – in their capacity as "directors" and "managers of [Petitioner]" – to sign a "Transition Agreement with BRG Asset Management LLC" and "amend the [Limited Partnership Agreement]" in August 2021, authorizing the replacement of Petitioner as general partner, and substituting "NOAL GP . . . as new general partner of the Fund," without the payment of the required "Sponsor Commitment and Removal Entitlement." (See id. ¶¶ 32-44) Petitioner claims that Foley, Dumont and Mizzi took these steps because Peel promised them "that they would continue to hold lucrative positions on many boards of directors and collect management fees." (Id. ¶ 32)

　　　　More than three years have passed since NOAL GP and the alleged co-conspirators committed their allegedly fraudulent acts. Although Petitioner has filed three lawsuits in Luxembourg arising out of the same events at issue here (id. ¶ 47), Petitioner states that it has not filed its contemplated civil fraud claim because it is still "seeking evidence that will aid it in pleading its claim for fraud; having yet to obtain the evidence sought, Petitioner is not yet in a position to publicly file its claims and support all of its allegations with evidence." (Pet. Opp. (Dkt. No. 22) at 23)

　　　　In opposing Petitioner's application, Respondents argue that Petitioner "has done absolutely nothing to advance [its alleged civil fraud] claim" in the four years that have passed since the alleged fraud was committed, "and certainly has taken no action in Luxembourg to advance it." Accordingly, "to the extent the requested discovery is relevant to the 'prospective fraud claim[,]' . . . that claim seems unlikely to be brought or, at bare minimum, insufficiently advanced to warrant [the] broad relief sought." (Resp. Reply (Dkt. No. 28) at 9-10)

Respondents also point out that – if a civil fraud action were brought in Luxembourg – State of Oregon employee Michael Langdon has been "identified as the <u>lead</u> defendant in this prospective suit." (<u>Id.</u> at 10) (emphasis in original) (citing Pet. Br. (Dkt. No. 3) at 19-20 and Pet. Opp (Dkt. No. 22) at 23-24) According to Respondents, the State of Oregon has a right to insist that any claim brought against Langdon proceed in the United States. If so, "there would be no 'foreign proceeding' for purposes of § 1782." (Resp. Br. (Dkt. No. 17) at 23)

i.       <strong><u>Applicable Law</u></strong>

"In considering whether a contemplated litigation meets [the 'for use' in a foreign proceeding] requirement, [a court] must ask (1) whether the proceeding is adjudicative in nature; and (2) if the litigation is sufficiently contemplated." In re Top Matrix Holdings Ltd., No. 18 MISC. 465 (ER), 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020) (citing Intel, 542 U.S. at 259). To establish that planned proceedings are within sufficient or "reasonable contemplation," "the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated" at the time the Section 1782 petition is filed. Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 123 (2d Cir. 2015). "At a minimum, a § 1782 applicant must present the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." Id. at 124.

The Second Circuit has repeatedly declined to articulate "'what precisely an applicant must show to establish' that a proceeding is more than speculative,'" "given the fact-specific nature of the inquiry." Mangouras v. Squire Patton Boggs, 980 F.3d 88, 102 (2d Cir. 2020) (quoting Certain Funds, 798 F.3d at 123); Certain Funds, 798 F.3d at 123 ("[w]e need not decide here what precisely an applicant must show to establish" sufficiently "objective indicium that the action is being contemplated"); IJK Palm LLC v. Anholt Servs. USA, Inc., 33 F.4th 669,

677 (2d Cir. 2022) ("While we have not delineated 'what precisely an applicant must show to establish such indications[,] . . . [a]t a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye.'") (quoting Certain Funds, 798 F.3d at 123-24).  While declining to provide more specific guidance, the Second Circuit has cautioned that – although "the ultimate decision to grant or deny an application is discretionary [–] . . . courts are 'not free to read extra-statutory barriers to discovery into section 1782' under the guise of exercising their discretion." See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd., 27 F.4th 136, 148 (2d Cir. 2022) (quoting Application of Gianoli Aldunate, 3 F.3d 54, 59 (2d Cir. 1993)).

        The Second Circuit has, however, rejected Section 1782 applications "where it was 'apparent that all that the [applicants] alleged before the district court was that they had retained counsel and were discussing the possibility of initiating litigation,' such that 'at the time the evidence was sought in th[e] case, the [applicants] had done little to make an objective showing that the planned proceedings were within reasonable contemplation.'" Mangouras, 980 F.3d at 100 (quoting Certain Funds, 798 F.3d at 124) (internal quotation marks and alterations in original) (emphasis in Certain Funds); see also IJK Palm LLC, 33 F.4th at 681 ("The only concrete step [petitioner] has taken toward initiating its proposed suit is to obtain funding for, and to retain, counsel.  That simple action, we have held, is not sufficient to make an objective showing that the planned proceedings are within reasonable contemplation.") (citing Certain Funds, 798 F.3d at 124); Certain Funds, 798 F.3d at 124 (district court did not err in determining that the anticipated foreign proceedings were not within reasonable contemplation when "it is apparent that all that the Funds alleged before the district court was that they had retained counsel and were discussing the possibility of initiating litigation.") (emphasis in original).

Similarly, courts in this District have observed that "Congress's desire that broad discovery be available for parties involved in international litigation [must be balanced] against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse." In Re Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P., No. 14 Civ. 1801 (NRB), 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014), aff'd sub nom. Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113 (2d Cir. 2015)); see also In re Sargeant, 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017) ("Courts must guard against the specter that parties may use § 1782 to investigate whether litigation is possible before launching it."); Deposit Ins. Agency v. Leontiev, No. 17MC00414GBDSN, 2018 WL 3536083, at *9 (S.D.N.Y. July 23, 2018) ("courts should be wary of fishing expeditions in which § 1782 applicants seek new tidbits they can use as the basis to bring litigation, rather than support the claims they have already made").

(a)    **Whether Section 1782 May Be Utilized to Determine Whether a Foreign Claim Exists**

As discussed above, there is no "necessity" requirement under Section 1782. In other words, a Section 1782 applicant need not demonstrate that it will not prevail in the foreign proceeding absent the evidence it seeks. See Mees, 793 F.3d at 298. Furthermore, "even where a foreign proceeding has not yet begun, § 1782 discovery need not be used at all in drafting the complaint in order to satisfy the 'for use' requirement," because "the language of [Section 1782] . . . provides that discovery may be ordered 'for use in a proceeding in a foreign or international tribunal[,]'" and "[a] 'proceeding' means the entire proceeding, not merely its initial stage." Id. at 299.

However, courts in this Circuit reject Section 1782 petitions where a petitioner's application indicates that the discovery it seeks is necessary to determine whether a claim in a

foreign proceeding may be brought in the first place.  In re Sargeant, 278 F. Supp. 3d at 823

("The assertion that Sargeant plans to use the evidence he seeks to assess whether to initiate

actions in the United Kingdom and the Isle of Man underscores the mere[ ] speculative[ness] of

the contemplated proceedings, and is plainly insufficient to provide this Court with some

concrete basis from which it can determine that the contemplated proceeding is more than just a

twinkle in counsel's eye.") (internal quotations and citations omitted); Ayyash v. Crowe Horwath

LLP, No. 17-MC-482(AJN), 2018 WL 2976017, at *3 (S.D.N.Y. June 13, 2018) ("[T]he Court is

concerned that Ayyash is using the § 1782 petition as a fishing expedition to determine if it

should pursue litigation against Respondents.  Indeed, Ayyash states that he seeks materials

regarding the legal relationship [between Respondents – auditors Crowe Horwath International

and Crowe Horwath LLP – and auditor Horwath Abou Chakra and Co./Crowe Horwath

Professional Auditors] because such materials will allow the Lebanon court to determine whether

Respondents can be held liable or whether Horwath Abou Chakra and Co. 'should be the sole[]

party held liable in the Lebanon proceeding,' and he asserts that the materials describing the

financial relationship will allow the Lebanon court to 'determine which parties besides [Horwath

Abou Chakra and Co./Crowe Horwath Professional Auditors], if any, it can seek recovery

from.'") (internal citations omitted); see also In re Pilatus Bank PLC, No. CV 20-MC-94-JD,

2021 WL 1890752, at *9 (D.N.H. May 11, 2021) ("[W]hen discovery is sought simply for the

purpose of determining whether to bring an action 'depending on what the evidence shows,' the

potential action is at best speculative and does not meet the requirement of being within

reasonable contemplation.") (citing Mangouras, 980 F. 3d at 101); In re Nokia Techs. Oy, No.

CV 23-01395-GBW, 2024 WL 1675025, at *3 (D. Del. Apr. 18, 2024) ("[T]he Court is

concerned that Nokia's § 1782 application is merely a fishing expedition to determine whether

the [foreign actions] it plans to file will be viable.  As such, the Court finds that Nokia has not

met its burden to show that its request for discovery is 'for use' in that proceeding.") (citing

Ayyash v. Crowe Horwath LLP, 2018 WL 2976017 (S.D.N.Y. June 13, 2018)); In re of Lucille

Holdings Pte. Ltd., No. 1:21-MC-99 (GMH), 2022 WL 1421816, at *15 (D.D.C. May 5, 2022)

(Because petitioner admitted in a December 2021 brief that respondent had possession of

"'[d]ocuments and information . . . relevant to and necessary for developing [petitioner's]

contemplated claims' against the HSBC Entities[,]" "it appears that, as late as the end of

December 2021 (five months after the filing of the [Section 1782] application), [petitioner] was

seeking discovery from [respondent] in order to determine whether it had a cause of action

against any of the HSBC Entities.  That is not a proper use of section 1782.") (emphasis added in

In re of Lucille Holdings) (internal citations omitted) (citing In re Certain Funds, 2014 WL

3404955, at *6).

> **(b)**     **Where Applicant Represents that it Intends to Bring Foreign Claims and Identifies those Claims, but States that the Actual Filing of the Contemplated Claims Is Contingent on Obtaining the § 1782 Discovery that Is Sought**

Courts are divided as to whether a foreign proceeding is "within reasonable

contemplation" where a petitioner represents that it will bring a foreign proceeding – and

articulates legal theories on which it allegedly plans to rely – while simultaneously stating that

the filing of the contemplated foreign claims is contingent on obtaining the Section 1782

discovery that is sought.  Compare In re Mutabagani, No. 22 MC 299 (VB), 2023 WL 2811621,

at *3-4 (S.D.N.Y. Apr. 6, 2023) (finding that foreign proceeding was "within reasonable

contemplation" – even though no action had been brought "in the five years since the alleged

breach of contract" – because petitioner's attorney attested to petitioner's "intent to litigate 'as

soon as possible,' describe[d] the legal theory on which [petitioner] plans to rely, and explain[ed] how [petitioner] intends to use the requested discovery in the anticipated proceeding"; noting that "the reason that [the foreign proceeding] has not yet been filed, according to [petitioner's] attorney, is that he needs the discovery requested here to satisfy Saudi Arabian pleading requirements," and thus petitioner "does not" improperly "seek discovery to help him decide whether or where to bring suit") (internal citations omitted), and BANOKA, S.a.r.l. v. Alvarez & Marsal Inc., No. 1:22-MC-182-GHW, 2024 WL 1242994, at *6-7 (S.D.N.Y. Mar. 22, 2024) (despite "Petitioners' concession that they lacked sufficient evidence to adequately plead their proposed claims under English Law," "objective indications" – including the fact that "Petitioners' counsel ha[d] developed a detailed legal theory for the proposed suit and submitted to the Court a 14-page declaration describing that theory and its factual basis," the "ret[ention of] English counsel and [the submission of] two pre-suit letter demand letters to [respondent] requesting documents and other information" – sufficiently demonstrated that "the suit is within reasonable contemplation"), with In re Rendon, 519 F. Supp. 3d 1151, 1157 (S.D. Fla. 2021) (foreign proceeding not reasonably contemplated where petitioner had stated that "'the evidence sought in the Application is needed to complete Applicants' investigation and for use in the imminent civil and anti-competition actions'"; noting that it stood "to reason that Applicants must rely on the discovery sought here to continue developing the theory of their case, which may or may not materialize as their investigation is not yet complete.") (internal citations omitted).

### ii.    **Analysis**

Here, Petitioner says the following as to why it needs the discovery it seeks in its Section 1782 petition:

> Petitioner is seeking evidence that will aid it in pleading its claim for fraud; having yet to obtain the evidence sought, Petitioner is not yet in a position to publicly file its claims and support all its allegations with evidence.

(Pet. Opp. (Dkt. No. 22) at 23)  In other words, Petitioner does not know at this point whether or not it has a fraud claim under Luxembourg law, and it needs the evidence sought in its Section 1782 petition in order to make that determination and then be "in a position to publicly file its claims." But implicit in this representation is the fact that the evidence Petitioner seeks may or may not permit it to file the contemplated fraud claim.  Accordingly, the petition here poses the issue of whether Congress intended that Section 1782 be a resource to assist a party in determining whether it has a claim that can be filed in a foreign jurisdiction, or whether Congress's intent was that Section 1782 be a resource to assist a party that already has a claim and intends to pursue that claim in a foreign jurisdiction.

Acknowledging that Congress's intent in enacting Section 1782 was to "'provid[e] efficient means of assistance to participants in international litigation in our federal courts and encourag[e] foreign countries by example to provide similar means of assistance to our courts,'" Schmitz, 376 F.3d at 84 (quoting In re Metallgesellschaft, 121 F.3d at 79), this Court does not believe that Congress intended that Section 1782 be used as a vehicle to assist parties in determining whether or not they have a claim that can be filed in a foreign jurisdiction. See In Re Certain Funds, 2014 WL 3404955, at *6.  Indeed, as the Second Circuit has recognized, Section 1782 is "typical[ly]" utilized by parties that have "already initiated a foreign proceeding," and thus have already made a determination that they have a claim.  See Mees, 793 F.3d at 299.

Here, Petitioner has stated that – absent the evidence it may or may not obtain through this Court's grant of its Section 1782 petition – it cannot make a determination as to

whether it has a viable civil fraud claim under Luxembourg law.  (See Pet. Opp. (Dkt. No. 22) at 23)  Petitioner's contemplated civil fraud action is thus contingent on it obtaining – through these Section 1782 proceedings – the evidence it needs to support its claims.  But where a Petitioner must "rely upon the requested [Section 1782] discovery 'to assess whether to initiate [contemplated foreign] actions,' [the Section 1782 application] [is] 'plainly insufficient.'"  In re Kuwait Ports Auth., No. 1:20-MC-00046-ALC, 2021 WL 5909999, at *8 (S.D.N.Y. Dec. 13, 2021) (quoting In re Sargeant, 278 F.Supp.3d at 823-24).

Mees is not to the contrary.  As noted above, Mees held that "discovery sought pursuant to § 1782 need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement," and that "even where a foreign proceeding has not yet begun, § 1782 discovery need not be used at all in drafting the complaint in order to satisfy the 'for use' requirement."  Mees, 793 F.3d at 298-99.  But in Mees, unlike here, petitioner did not seek discovery in order to determine whether she had a foreign claim.  See id. at 294-97.  To the contrary, the Mees petitioner had a straightforward defamation claim, which she in fact pursued before obtaining any Section 1782 discovery.  See Mees, 793 F.3d at 295-296, 302 (describing contemplated defamation claim and noting that "[petitioner] has now commenced her defamation suit in the Netherlands").

Mees also does not address whether a court can find that a foreign proceeding is within "reasonable contemplation" when the petitioner is not sure whether or not it has a foreign claim.  The Mees court assumed that petitioner's defamation claim was within reasonable contemplation.  See id. at 299 n.11 ("[T]he district court, in determining that the discovery was not 'for use' in a foreign proceeding, did not address whether the Dutch lawsuit was within reasonable contemplation. . . . But because [respondent] does not pursue the issue on appeal, we

44

need not decide it. Accordingly, we consider whether [petitioner] satisfied the 'for use'

requirement, assuming that the defamation suit was within reasonable contemplation. At any

rate, since [petitioner] now has instituted an action in the Netherlands, the 'within reasonable

contemplation' issue is apparently moot.").

    In sum, <u>Mees</u> does not address the issue posed here, which is whether a Section

1782 petitioner may use the statute to collect evidence in order to determine whether it has a

foreign claim.[10]  On this point, courts have ruled that this is not a proper use of the statute. <u>See</u>

<u>In re Sargeant</u>, 278 F. Supp. 3d at 823 ("The assertion that Sargeant plans to use the evidence he

seeks to assess whether to initiate actions in the United Kingdom and the Isle of Man

underscores the mere[ ] speculative[ness] of the contemplated proceedings, and is plainly

insufficient to provide this Court with some concrete basis from which it can determine that the

contemplated proceeding is more than just a twinkle in counsel's eye."); <u>In re of Lucille</u>

<u>Holdings Pte. Ltd.</u>, 2022 WL 1421816, at *15 n.18 (Section 1782 applicant must "present the

court with objective indicia that its investigation has gone past the preliminary stages and [that] it

is not seeking to use the statute or the tools of the Federal Rules of Civil Procedure to

'investigate whether litigation is possible in the first place,' <u>In re Certain Funds</u>, 2014 WL

3404955, at *6, or 'find out if it has any basis for a claim,' <u>[United States v.] All Assets Held at</u>

<u>Bank Julius Baer & Co., Ltd.</u>, 202 F. Supp. 3d [1,] 9 [(D.D.C. 2016)]."); <u>In re Rendon</u>, 519 F.

Supp. 3d at 1157 (finding that "reasonable contemplation" requirement of Section 1782 was not

---

[10]  <u>In re Hornbeam Corp.</u>, 722 F. App'x 7 (2d Cir. 2018) (summary order) – cited by Petitioner
(Pet. Opp. (Dkt. No. 22) at 23) – likewise does not address a scenario in which a petitioner seeks
Section 1782 discovery in order to determine whether it has a claim. <u>See In re Hornbeam Corp.</u>,
722 F. App'x 7, 9-10 (holding that petitioner who had "previously brought two related actions in
[a foreign jurisdiction] against [a foreign adversary] and represented that it intended to initiate
further litigation once it obtained additional information" provided "a sufficiently 'concrete
basis' for a 'contemplated [foreign] proceeding.'" (quoting <u>Certain Funds</u>, 798 F.3d at 124)).

met where "Applicants need the evidence requested in their Application to determine whether they have a cognizable claim, and if so, against whom").

The same analysis applies here. Despite the passage of four years since the alleged fraud took place, Petitioner has not set forth any timeline for when it plans to commence the contemplated action – apparently because it needs the evidence requested to determine whether it has a cognizable claim. See In re Certain Funds, 2014 WL 3404955, at *7 ("Although the petitioners attest that they have retained counsel to investigate and prosecute their claims in the planned proceedings, the Court is not persuaded that this means that a dispositive ruling by a foreign tribunal is within reasonable contemplation. Furthermore, the concerns about misuse of the discovery process are particularly pronounced in this case, since petitioners have had an opportunity to initiate judicial proceedings abroad but have failed to do so. Had petitioners filed a lawsuit before submitting this application for discovery, this concern would be mitigated."); cf. In re Application of Stephen Shefsky for an Ord. to Take Discovery for Use in Foreign Proc. Under 28 U.S.C. § 1782, No. 2:23-CV-00633-JCM-BNW, 2024 WL 2275215, at *4-6 (D. Nev. May 20, 2024) (noting that "[t]ypically, the driving force behind a 'speculative' finding is the contingency of the foreign proceeding upon the receipt of discovery materials"; holding that foreign proceeding was within reasonable contemplation because "most importantly, [petitioner's] counsel's representations at [a] hearing, coupled with the information submitted in [petitioner's Section 1782] application, demonstrate that [petitioner] is not merely seeking discovery to determine whether he can bring his claim in the first place. At the hearing, counsel submitted that [petitioner] could bring his claims in Canada right now absent discovery, but that he seeks the requested discovery – which he knows exists because [respondent] submitted it to the SEC – to aid him in making his pleadings as strong as possible, given the complexity of his

causes of action.") (emphasis in original); <u>In re Zouzar Bouka; Vision Indian Ocean S.A.</u>, 637 F.

Supp. 3d 74, 86-87 (S.D.N.Y. 2022), <u>modified</u> <u>on</u> <u>other</u> <u>grounds</u> <u>on</u> <u>reconsideration</u> <u>sub</u> <u>nom.</u> <u>In</u>

<u>re Bouka</u>, 654 F. Supp. 3d 283 (S.D.N.Y. 2023) (finding that because the petitioner had "retained

local counsel, laid out a basis for liability, and identified the factual basis of his claims, . . . the

French Proceedings are 'reasonably contemplated,' and thus the requested discovery would be

'for use' in a foreign proceeding"; reaching this result even though petitioner admitted "that he

'need[s] additional information about the purported sale so that [he] can authorize [counsel] to

proceed with the lawsuit,'" because "[a]n intent by an applicant to file a lawsuit 'once it obtain[s]

additional information[]' . . . is not necessarily fatal to a section 1782 application," as there is a

"distinction between cases in which an applicant intends to file pending new information and

those in which an applicant needs new information to decide whether to file at all," and

"[petitioner's] counsel has laid out at least one theory of liability in the French Proceedings that

does not rely on [the] unknown details [sought through Section 1782 discovery] at all.") (internal

citations omitted).

Here, Petitioner has indicated that – absent the evidence it may or may not obtain

through this Court's grant of its Section 1782 petition – it cannot make a determination as to

whether it has a viable civil fraud claim under Luxembourg law. (<u>See</u> Pet. Opp. (Dkt. No. 22) at

23) In apparent confirmation of that fact, four years have passed since the alleged fraud took

place, and no civil fraud claim has been filed in Luxembourg. Petitioner has likewise not

provided any timeline for the filing of such a claim, and no draft complaint has been provided to

the Court. Given these circumstances, this Court cannot find that a civil fraud proceeding in

Luxembourg is within "reasonable contemplation" under Section 1782. Accordingly, Petitioner

has not met its burden to demonstrate that the discovery it seeks pursuant to Section 1782 is "for

use" in a contemplated foreign proceeding. As a result, to the extent that Petitioner's Requests 2, 3, 4, 5, and 6(d) are premised on a need for discovery in connection with Petitioner's contemplated civil fraud claim, Respondents' motion to quash will be granted.

**B.    Whether the Discretionary Factors are Satisfied**

As to Petitioner's requested discovery "for use" in connection with its "unclean hands" defense in the NOAL GP/Master Luxco Lawsuit, this Court must go on to consider the four discretionary factors set forth in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004).

**1.    Whether the Evidence Sought is within the Jurisdictional Reach of the Luxembourg Court**

Under the first Intel factor, courts consider "[w]hether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid." In re Warren, 2020 WL 6162214, at *4 (quotation marks and citations omitted); see also Intel, 542 U.S. at 264 ("[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence . . . . In contrast, nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.").

According to Petitioner, "[t]he first Intel factor asks only whether the party from whom discovery is sought is a participant in the foreign proceeding, not whether they are related." (Pet. Opp. (Dkt. No. 22) at 25) (citing In re Top Matrix Holdings Ltd., 2020 WL 248716, at *5) While NOAL GP and Petitioner are parties to the ongoing NOAL GP/Master

Luxco Lawsuit in Luxembourg, Treo AM is not, and is not otherwise within the jurisdictional

reach of the Luxembourg court.[11]  (See id.) (citing In re Pidwell, No. 121MC0166ALCKHP,

2022 WL 192987, at *5 (S.D.N.Y. Jan. 21, 2022))  Moreover, according to Petitioner, "Treo AM

has documents and communications that NOAL GP does not"[12] (id. at 26), and "Treo AM's

involvement with the Fund appears to predate NOAL GP's."  (Id. at 26-27) (citing Resp. Br.

(Dkt. No. 17) at 11 and Jan. 27, 2023 Thieltgen Decl. (Dkt. No. 5) ¶ 52)

        Respondents respond that Petitioner's "Application seeks what is for all intents

and purposes party discovery that is obtainable from Petitioner's litigation adversaries in

Luxembourg and that can and should be handled by the courts of Luxembourg."  (Resp. Br. (Dkt.

No. 17) at 24) (citing Intel, 542 U.S. at 264)  While Respondents concede that "Treo AM is not

itself a named participant in" the Luxembourg proceedings, "its wholly owned subsidiary, []

NOAL GP, is a party to the [NOAL GP/Master Luxco litigation]."  (Id.) (citing Pet. Br. (Dkt.

No. 3) at 19)  "Moreover, . . . with the exception of one independent director, [] NOAL GP is

made up exclusively of Treo AM personnel working to run the day-to-day operations of the

Fund."  (Id.) (citing da Silva Decl. (Dkt. No. 18) ¶ 5)  According to Respondents, "[c]ourts in

this [D]istrict have held that when a subsidiary is party to a foreign proceeding and the parent is

the discovery target, the first Intel factor weighs against granting the discovery application

because the evidence sought is within the foreign tribunal's jurisdictional reach."  (Resp. Reply

(Dkt. No. 28) at 13) (quotation marks omitted) (citing In re Postalis, No. 18-MC-497 (JGK),

2018 WL 6725406, at *1 (S.D.N.Y. Dec. 20, 2018); In re Application of Elvis Presley

Enterprises LLC for an Ord. to Take Discovery Pursuant to 28 U.S.C. § 1782, No. 15MC386

---

[11]  As noted above, Treo AM is a Delaware corporation.
[12]  Because Petitioner has offered no factual support for this assertion, the Court disregards it.

(DLC), 2016 WL 843380, at *3 (S.D.N.Y. Mar. 1, 2016); <u>Associacao dos Profissionais dos</u>

<u>Correios v. Bank of New York Melon Corp.</u>, No. 22-MC-0132 (RA) (KHP), 2022 WL 4955312,

at *7 (S.D.N.Y. Oct. 4, 2022); <u>In re Kreke Immobilien KG</u>, No. 13 MISC. 110 NRB, 2013 WL

5966916, at *5 (S.D.N.Y. Nov. 8, 2013), <u>abrogated on other grounds by</u> <u>In re del Valle Ruiz</u>, 939

F.3d 520 (2d Cir. 2019))

        Notwithstanding Respondents' case citations, the more recent decisions in this

District have concluded that "parent companies of non-U.S. participants in foreign proceedings

are separate legal entities for purposes of Section 1782 applications," and accordingly parent

entities are not viewed as within the jurisdictional reach of a foreign court for purposes of the

first <u>Intel</u> factor.  <u>In re Associacao dos Profissionais dos Correios</u>, No. 22-MC-132 (RA), 2024

WL 4299019, at *5 (S.D.N.Y. Sept. 25, 2024) ("parent companies of non-U.S. participants in

foreign proceedings are separate legal entities for purposes of § 1782 applications"; ruling that

petitioner could "seek any internal investigation reports on potential wrongdoing by relevant

executives that [the parent company] produced but did not share with [its foreign subsidiary]");

<u>In re Pidwell</u>, No. 121MC0166ALCKHP, 2022 WL 192987, at *5 (S.D.N.Y. Jan. 21, 2022)

("[p]arent companies of non-U.S. participants in foreign proceedings are separate legal entities

for purposes of Section 1782 applications"; ruling that proposed subpoenas targeting parent

company could issue under Section 1782 because "[w]hile it may be true that [the parent

company] is assisting [its foreign subsidiary] in the Portuguese Litigation, it is not in fact a party

to the litigation . . . . [which is] the critical issue when evaluating the first <u>Intel</u> factor").

        Here, it is undisputed that Treo AM and NOAL GP are distinct corporate entities,

and that Treo AM is not a party to the Luxembourg proceedings.  (<u>See</u> Resp. Br. (Dkt. No. 17) at

24; Resp. Reply (Dkt. No. 28) at 11)  Furthermore, Respondents' argument that Treo AM and

NOAL GP may have access to the same materials (see Resp. Br. (Dkt. No. 17) at 24-25; Resp.

Reply (Dkt. No. 28) at 10-12) is not dispositive for purposes of the first Intel factor. See Fed.

Republic of Nigeria, 27 F.4th at 160 n.7 (explaining that even if respondent "is likely to possess

many of the same documents as" the party involved in the foreign proceeding at issue,

respondent "is a distinct legal personality," and thus the first Intel factor did not weigh against

the § 1782 application); In re Top Matrix Holdings Ltd., 2020 WL 248716, at *5 ("the court is

not prohibited from compelling discovery of information in possession of both a parent company

and its subsidiary"); In re Pidwell, 2022 WL 192987, at *5 ("the fact that a U.S. affiliate may

have some of the same documents as its foreign affiliate in the foreign litigation does not weigh

against granting the requested discovery").

   Accordingly, this Court concludes that the first Intel factor favors Petitioner.

  **2. Whether Luxembourg Courts Would Be**
    **Receptive to Judicial Assistance from this Court**

   Under the second Intel factor, courts consider "the nature of the foreign tribunal,

the character of the proceedings underway abroad, and the receptivity of the foreign government

or the court or agency abroad to U.S. federal-court judicial assistance." Intel, 542 U.S. at 264.

   Petitioner contends that "Luxembourg is affirmatively receptive to evidence

obtained with the aid of other countries" – noting that "it is a member of the Hague Evidence

Convention" – and thus "courts have freely granted petitions seeking disclosure in support of

Luxembourgish proceedings." (Pet. Br. (Dkt. No. 3) at 27) (citing In re Joint Stock Co.

Raiffeinsenbank, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *5 (N.D. Cal. Nov. 2, 2016); In

re Blue Skye Fin. Partners S.A.R.L., No. 22 MISC. 171 (KPF), 2022 WL 2441074, at *3

(S.D.N.Y. July 5, 2022); In re Furstenberg Fin. SAS, 785 F. App'x 882, 885 (2d Cir. 2019))

Petitioner further asserts that "Treo AM does not dispute that the Luxembourg courts . . . would

be receptive to the evidence obtained via § 1782, even though their systems of disclosure are different." (Pet. Opp. (Dkt. No. 22) at 29)

This Court agrees that Respondents have not provided any basis for this Court to conclude that Luxembourg courts would not be receptive to this Court's assistance. Accordingly, the second Intel factor favors Petitioner.

### 3.    Whether Petitioner's Request Is an Attempt to Circumvent Foreign Proof-Gathering Restrictions

Under the third Intel factor, courts "consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel, 542 U.S. at 265.

Petitioner contends that this factor weighs in its favor, because "Luxembourg has no law precluding the disclosure of testimony, emails, or corporate documents in litigation, and will enter appropriate protective orders where necessary[,]" and "[t]he evidence sought does not violate any public policy of Luxembourg." (Pet. Br. (Dkt. No. 3) at 28) (citing Jan. 27, 2023 Thieltgen Decl. (Dkt. No. 5) ¶ 56) And while Petitioner acknowledges that the Limited Partnership Agreement it entered into with the Fund and its investors contains a forum selection clause, "none of the persons and entities involved in the pending or prospective litigation . . . are parties to the agreement that binds [Petitioner]. [The Limited Partnership Agreement] is between [Petitioner], the Fund, and the Investors only." (Pet. Opp. (Dkt. No. 22) at 29) (emphasis in original) (citing da Silva Decl., Ex. 1 (Sec. Am. LPA) (Dkt. No. 18-1))

Respondents counter that because Petitioner drafted and executed the Limited Partnership Agreement – which contains a forum selection clause designating Luxembourg the "exclusive jurisdiction" for litigation concerning the Fund – Petitioner "should not be allowed to 'circumvent foreign proof gathering restrictions' in the forum it selected through a series of

discovery requests it contends a Luxembourg court would be unlikely to allow and before even receiving a ruling on the one discovery request it has already made in that forum." (Resp. Br. (Dkt. No. 17) at 27-28) (emphasis in original) (quoting Aventis Pharma v. Wyeth, No. 19-MC-70, 2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009))  According to Respondents, "where, as here, sophisticated parties freely chose the use of a particular forum and its laws to govern their disputes, U.S. courts routinely deny requests to obtain party discovery that would not be available in the chosen forum." (Id. at 28) (quotation marks and citations omitted)

Treo AM and NOAL GP advanced substantially similar arguments against Petitioner in Section 1782 litigation in the District of Oregon.  See In re Petition of Novalpina Capital Partners I GP S.À.R.L. for Judicial Assistance Pursuant to 23 U.S.C. § 1782, No. 23-MC-00082-IM (D. Or. May 12, 2023), Intervenors' Resp. (Dkt. No. 28) at 16-18.[13]  The Oregon judge rejected those arguments:

> While the [Limited Partnership Agreement] would preclude Petitioner from initiating litigation in this District, [Treo AM and] NOAL GP do[] not explain why the [Limited Partnership Agreement] would preclude a section 1782 petition, which facilitates discovery.  As noted above, [respondents] are not parties to the proceeding for which this discovery is sought.  This Court accordingly does not view the petition as an attempt to circumvent the [Limited Partnership Agreement's] forum selection clause, but rather an attempt to obtain information from foreign individuals who reside in this District, as directly contemplated by section 1782.  See 28 U.S.C. § 1782.

In re Petition of Novalpina Capital Partners I GP S.À.R.L. for Judicial Assistance Pursuant to 23 U.S.C. § 1782, No. 23-MC-00082-IM (D. Or. Aug. 10, 2023), Order Granting Pet. Appl. (Dkt.

---

[13]  In the Oregon action, Petitioner seeks discovery from respondents Michael Langdon and Tobias Read, State Treasurer of the State of Oregon, for use in the NOAL GP/Master Luxco Lawsuit and in the contemplated civil fraud proceeding at issue here.  See In re Petition of Novalpina Capital Partners I GP S.À.R.L. for Judicial Assistance Pursuant to 23 U.S.C. § 1782, No. 23-MC-00082-IM (D. Or. Jan. 27, 2023), Pet. Br. (Dkt. No. 2) at 5, 18-21.  Treo AM and NOAL GP were granted permission to intervene in the Oregon action.  See In re Petition of Novalpina Capital Partners I GP S.À.R.L. for Judicial Assistance Pursuant to 23 U.S.C. § 1782, No. 23-MC-00082-IM (D. Or. May 3, 2023), Order Granting Treo AM NOAL GP Mot. Intervene (Dkt. No. 24).

No. 32) at 7 n.2 (emphasis in original).  The same analysis applies to Treo AM, O'Connor, and Dunn in the instant action.

Citing In re Kreke Immobilien KG, 2013 WL 5966916, at *7, and In re Alghanim, No. 21-MC-00167, 2022 WL 1423088, at *4 (S.D.N.Y. May 5, 2022), however, Respondents argue that "courts enforce forum selection clauses where a petitioner is bound by a forum selection clause, even if the discovery target is not." (Resp. Reply (Dkt. No. 28) at 14)  The cases cited by Respondents are not on point.

In In re Kreke Immobilien KG, 2013 WL 5966916, the court enforced a foreign selection clause against a Section 1782 petitioner because, "in the context of th[at] application, [petitioner's adversary in the foreign proceeding] and [respondent were] the same for all intents and purposes."  In re Kreke Immobilien KG, 2013 WL 5966916, at *7 n.5.  As discussed above, Treo AM, O'Connor and Dunn are not parties to the NOAL GP/Master Luxco Lawsuit, and this Court will not ignore the corporate form as to Treo AM.

Similarly, in In re Alghanim, 2022 WL 1423088, the court concluded "that [petitioner's adversary in the foreign proceeding] is the real party in interest from whom discovery is sought [in the Section 1782 proceeding] and is subject to the jurisdiction of the [foreign] court[.]  [These circumstances] prompt[] the Court's concern that [p]etitioner's application constitutes an improper attempt at forum-shopping," a concern "heightened by the fact that [p]etitioner already assented to foreign authority by signing a contract with [petitioner's adversary in the foreign proceeding] that contained a forum selection clause."  In re Alghanim, 2022 WL 1423088, at *4 (quotation marks and citations omitted).  Again, this case is not on point because NOAL GP – Petitioner's adversary in the NOAL GP/Master Luxco Lawsuit – is not the real party in interest from whom the Section 1782 discovery is sought.

The Court concludes that the third Intel factor favors Petitioner.

**4.      Whether the Subpoena Requests
         Are Unduly Intrusive or Burdensome**

The final Intel factor requires a court to consider "[w]hether the subpoena contains unduly intrusive or burdensome requests." In re Warren, 2020 WL 6162214, at *5.

Petitioner contends that Dunn and O'Connor "will be able to provide testimony of conversations and meetings and other exchanges that occurred outside the four corners of the documents in Treo AM's possession," because "[e]ach of the Respondents will have had extensive contact with [Foley, Dumont, and Mizzi] and lenders to Master Luxco's subsidiaries during the relevant time period." (Pet. Opp. (Dkt. No. 22) at 37) (citing Pet. Br. (Dkt. No. 3)) Petitioner further argues that "[i]n the context of a fraud, there is an incentive to conceal intent and limit written communications, underscoring the need for deposition testimony, even where documents have been sought on the same subject." (Id.) Petitioner also contends that "the categories of documents requested are directly related to the litigation and critical for Petitioner's claims and defenses." (Id. at 32)

Respondents counter that the depositions Petitioner seek "appear principally designed to permit Petitioner to engage in a wildly invasive, wholly unnecessary fishing expedition into prospective theories and claims that have not yet been brought." (Resp. Br. (Dkt. No. 17) at 31) (citing Deposit Ins. Agency v. Leontiev, 2018 WL 3536083, at *9 (courts should "be wary of fishing expeditions in which § 1782 applicants seek new tidbits they can use as the basis to bring litigation, rather than support the claims they have already made.")) Respondents further contend that "the Application is unduly burdensome under the fourth Intel factor," because Petitioner makes "17 distinct document requests for huge swathes of material from a

multi-year period," and "the application 'unreasonably seeks . . . irrelevant materials' to the underlying litigation."[14] (Id.) (quoting Mees, 793 F.3d at 302 n.18)

In considering the fourth Intel factor, courts "'assess whether the discovery is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure.'" Union Fenosa Gas, S.A. v. Depository Tr. Co., No. 20 MISC. 188 (PAE), 2020 WL 2793055, at *7 (S.D.N.Y. May 29, 2020) (quoting Mees, 793 F.3d at 302). A party moving to quash a subpoena "'bears a heavy burden of proof'" as to this issue. Kirshner, 2005 WL 1214330, at *2 (quoting Irons v. Karceski, 74 F.3d 1262, 1264 (D.C. Cir. 1995)). To prevail, the movant cannot "merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance." Id. "[I]nconvenience alone" is insufficient justification to quash "a subpoena that seeks potentially relevant testimony." Id. Furthermore, "'[g]eneral and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information.'" In re Vale S.A., No. 20MC199JGKOTW, 2021 WL 311236, at *3 (S.D.N.Y. Jan. 29, 2021) (quoting Lindsey v. Butler, No. 11-cv-9102, 2017 WL 4157362, at *3 (S.D.N.Y. Sept. 18, 2017)). In general, "'it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying

---

[14] Citing Heraeus Kulzer, GmbH v. Biomet, Inc., 633 F.3d 591, 594 (7th Cir. 2011), Respondents argue that "the Application is [also] unduly burdensome under the fourth Intel factor" in "that Petitioner has effectively forced its adversaries to litigate these issues in two jurisdictions." (Resp. Br. (Dkt. No. 17) at 31-32) But in Heraeus the court noted that "district courts must be alert for potential abuses" in the use of Section 1782, such as "a party [seeking] discovery in a federal district court that it could obtain in the foreign jurisdiction, thus gratuitously forcing his opponent to proceed in two separate court systems." Heraeus Kulzer, GmbH, 633 F.3d at 594. As discussed above, Respondents are not parties to the Luxembourg proceedings, and thus are not being forced to litigate in two jurisdictions.

relief outright.'" <u>Azima v. Citibank, N.A.</u>, No. 22 MISC. 72 (KPF), 2022 WL 1185600, at *1

(S.D.N.Y. Apr. 21, 2022) (quoting <u>Mees</u>, 793 F.3d at 302).

**a.    <u>Deposition Requests</u>**

As to the requested depositions of Dunn and O'Connor, Petitioner offers no

factual support for its assertion that "[e]ach of the Respondents will have had extensive contact

with [Foley, Dumont, and Mizzi] and lenders to Master Luxco's subsidiaries during the relevant

time period," and "will also have information concerning NOAL GP's conspiracy to evade

payment of the Removal Entitlement and Sponsor Commitment, and deceptive acts taken in

connection therewith."  (Pet. Opp. (Dkt. No. 22) at 37) (citing Pet. Br. (Dkt. No. 3))  As a result,

this Court cannot credit this allegation.  <u>See In re Klein</u>, No. 20-MC-203 (PKC), 2022 WL

14786787, at *4 (S.D.N.Y. Oct. 26, 2022) ("'While Rule 26(b)(1) still provides for broad

discovery, courts should not grant discovery requests based on pure speculation that amount to

nothing more than a "fishing expedition" into actions or past wrongdoing not related to the

alleged claims or defenses.'") (quoting <u>Collens</u>, 222 F.R.D. at 253).  Petitioner's bare assertion

that "O'Connor . . . and Dunn have been involved with the [Limited Partner Advisory

Committee] and/or the Fund since at least July 2021, and have continued to guide NOAL GP,

now organized under the parent corporation of Treo Asset Management LLC instead of BRG

AM" (Jan. 27, 2023 Thieltgen Decl. (Dkt. No. 5) ¶ 52), is insufficient to demonstrate that

O'Connor and Dunn possess information relevant to Petitioner's "unclean hands" defense in the

NOAL GP/Master Luxco Lawsuit.  Accordingly, Petitioner's request to depose O'Connor and

Dunn will be denied.

**b.    <u>Document Requests</u>**

As to Petitioner's document requests, Respondents complain that they are

"overbroad, unduly burdensome, and amount[] to little more than fishing expeditions."  It would

"border[] on absurd" to "burden the Court with technical details of precisely how it would

collect, process and review two years' worth of data from all Treo AM personnel. . . ." (Resp.

Reply (Dkt. No. 28) at 15)

It "is undoubtedly the case in many § 1782 applications," however, that

"complying with . . . subpoenas would involve the production of thousands of documents and

inordinate numbers of hours of work." In re Vale S.A., 2021 WL 311236, at *4 (quotation marks

omitted); see also In re Application of Chevron Corp., 749 F. Supp. 2d 135, 140 (S.D.N.Y.),

adhered to on reconsideration sub nom. In re Chevron Corp., 749 F. Supp. 2d 170 (S.D.N.Y.

2010) (finding objection to subpoenas as "unduly burdensome" was "somewhat conclusory[,]"

because respondent merely spoke "in terms of a 'massive' number of documents and the possible

need to produce thousands of them"). And as Petitioner points out (see Pet. Opp. (Dkt. No. 22)

at 32-33), courts regularly approve Section 1782 applications seeking discovery over similar

temporal periods. See, e.g., Azima v. Citibank, N.A., No. 22 MISC. 72 (KPF), 2022 WL

1287938, at *3 (S.D.N.Y. Apr. 29, 2022) (finding that "Petitioner's request comports with

the Intel factors" after noting that "the subpoena is temporally limited to documents created in or

after 2015"); In re FourWorld Event Opportunities Fund, L.P., No. 22 MISC. 316 (KPF), 2022

WL 17156111, at *4 (S.D.N.Y. Nov. 21, 2022) (finding that "Applicant's proposed subpoenas

are not unduly intrusive or burdensome[,]" as the proposed document subpoena "is temporally

limited to documents from January 1, 2019, through [November 10, 2022]").

Respondents' conclusory allegations as to burden are not sufficient to permit them

to carry the "heavy burden of proof" required to prevail. Kirshner, 2005 WL 1214330, at *2

(quoting Irons, 74 F.3d at 1264); see also In re Application of Chevron Corp., 749 F. Supp. 2d at

140 (rejecting as conclusory an argument that compliance with subpoenas would be unduly

burdensome because "no serious effort has been made to quantify the amount of time or effort that would be required.").

Respondents' remaining arguments about relevancy are not persuasive; "[g]iven the broadly permissive standard by which a court evaluates the relevance of discoverable material, and the parties' presentation of a factual dispute regarding the relevance of the discovery sought, it is inappropriate to deny [Petitioner's] discovery requests on the ground that the requested discovery is irrelevant to [Petitioner's defense in the foreign proceeding]." In re Application Pursuant to 28 U.S.C. Section 1782 for an Ord. Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in Actions Pending in the Norway, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) ("because the Court is called upon only to resolve a discovery issue that arises from underlying litigation in foreign jurisdictions, the court should be particularly wary of denying discovery on relevance grounds."). For the reasons discussed above, Petitioner has adequately explained – as to those requests sustained by this Court – why the document discovery it seeks is relevant to its "unclean hands" defense in the NOAL GP/Master Luxco Lawsuit.

*     *     *     *

Analysis of the four Intel factors here indicates that Respondents' motion to quash Petitioner's requests for discovery "for use" in the NOAL GP/Master Luxco Lawsuit should be granted as to Petitioner's deposition requests and denied as to Petitioner's document requests.

## C.    Whether this Court Should Otherwise Narrow the Discovery Permitted

Respondents contend that – if this Court authorizes any of the discovery Petitioner seeks – the discovery permitted should be limited to Treo AM, and limited to the time period of

July-August 2021.  Respondents further contend that their motion to quash should be granted as to Request 6.  (See Resp. Br. (Dkt. No. 17) at 35-38)

### 1.    Limitation to Treo AM

Petitioner's subpoena requests documents from "the entity named Treo Asset Management LLC, formerly known as BRG Asset Management LLC."  (May 26, 2023 Pet. Ltr., Ex. 1 (Proposed Subpoenas) (Dkt. No. 11-1) at 5)  Petitioner expresses concern, however, that certain of the documents it seeks might be in the possession of NOAL GP.  (See Pet. Br. (Dkt. No. 3) at 26) (citing Jan. 27, 2023 Thieltgen Decl. (Dkt. No. 5) ¶ 53)  Accordingly, Petitioner asks that Treo AM be directed to produce documents that it is in a position to demand from NOAL GP, as its subsidiary.  (Pet. Opp. (Dkt. No. 22) at 36)

Respondents counter that Petitioner's document requests should be limited to Treo AM, noting that such a determination would be "consistent with Petitioner's characterization of [Treo AM] as 'related, though distinct' [from] NOAL GP" (Resp. Br. (Dkt. No. 17) at 35) (quoting Pet. Br. (Dkt. No. 3) at 27), and "would meaningfully narrow the Subpoena and reduce the burdens thereby imposed."  (Id. at 36)

Petitioner's Section 1782 petition seeks documents from "the entity named Treo Asset Management LLC, formerly known as BRG Asset Management LLC" – not from NOAL GP.  (May 26, 2023 Pet. Ltr., Ex. 1 (Proposed Subpoenas) (Dkt. No. 11-1) at 5)  Moreover, NOAL GP is a party to the NOAL GP/Master Luxco Lawsuit; accordingly, Petitioner can seek documents from NOAL GP in connection with the Luxembourg proceedings.

For these reasons, Respondents' discovery obligations will be limited to Treo AM.

2.    **Temporal Scope**

Petitioner's document subpoenas provide for a temporal scope of "December 2020 until present." (Id.) Petitioner contends that this time period is necessary because – while "many of the documents are likely to date to a six-week period in [July and August] 2021" – "[c]ritical documents [also] fall outside of that period." (Pet. Opp. (Dkt. No. 22) at 33) Petitioner cites, for example, "documents relating to [t]he valuation of the Fund and its portfolio companies for the purpose of paying the Removal Entitlement and Sponsor Commitment and the year-end valuation as of 31 December 2021." In this regard, Petitioner notes that NOAL GP stated in November 2021 "that the valuation was 'infeasible (and was always [] unworkable[)].'" (Id. at 34 (citing Jan. 27, 2023 Thieltgen Decl. (Dkt. No. 5) ¶ 44))

In opposition, Respondents maintain that they "had no involvement in the Fund prior to the summer of 2021, and . . . all of the events relevant to the pending and contemplated litigation occurred shortly before or at the time of Petitioner's removal in August 2021." (Resp. Br. (Dkt. No. 17) at 36) Respondents argue that, given these circumstances, "there is no reason that [they] should be put to the substantial burden and expense of collecting and reviewing an additional two years' worth of emails and documents from Treo AM personnel." (Resp. Reply (Dkt. No. 28) at 17) (emphasis in original) Accordingly, Respondents ask this Court to "define the relevant time period as July-August 2021." (Resp. Br. (Dkt. No. 17) at 36)

Given (1) this Court's ruling that Petitioner's document requests apply only to Treo AM; and (2) Petitioner's acknowledgement that "Treo AM apparently became involved with the Fund in or around July 2021" (Pet. Opp. (Dkt. No. 22) at 33), the beginning point for Petitioner's document requests will be July 1, 2021. As to the end point, documents potentially relevant to Petitioner's "unclean hands" defense in the NOAL GP/Master Luxco Lawsuit extend

to the valuation of the Fund in December 2021, and to records of payments by Treo AM to

Langdon, Foley, Dumont, Mizzi, and to the corporate entities listed in the subpoenas at any date

prior to the petition.

Accordingly, the temporal scope of Petitioner's document requests will run from

July 1, 2021 to January 27, 2023, the date of the Section 1782 petition.

### 3.    Whether Document Request 6 Should be Quashed

Respondents contend that Document Request 6 should be quashed.  Document

Request 6 seeks from Treo AM, O'Connor, Farrell, and Dunn:

> All Documents relating to any payments, assets, or things of value offered, promised
> or given to Michael Langdon, Allen Foley, Gaëtan Dumont, Philip Zarb Mizzi, Avonova
> S.a.r.l, The Square Finance S.a.r.l or Alter Domus Alternative Asset Fund Administration
> S.a.r.l., Finbarr O'Connor, Gavin Farrell, Jeffrey Dunn, BRG NOAL GP S.a.r.l. and/or
> BRG Asset Management LLC in connection with:  a. the introduction of and provision of
> services by BRG Asset Management LLC to the Fund; b. the replacement of Novalpina
> Capital Partners I GP S.a.r.l. as general partner of the Fund; c. the appointment of and
> provision of services by BRG NOAL GP S.a.r.l as general partner of the Fund; d. the
> introduction of Stanley Capital Partners to the Fund; and e. any other work or service
> performed in connection with the Fund or the Fund's direct and indirect subsidiaries.

(May 26, 2023 Pet. Ltr., Ex. 1 (Proposed Subpoenas) (Dkt. No. 11-1) at 6-7)

Respondents argue that Request 6 should be quashed because it would "likely be

very burdensome" to respond to, and "such payments are of no relevance to either the pending or

prospective claims."  (Resp. Br. (Dkt. No. 17) at 37-38)  Respondents further contend that, "[t]o

the extent Petitioner believes it is entitled to know the total amount [] NOAL GP has been paid

since Petitioner's removal in furtherance of its claim those payments should be returned to the

Fund, not only is such information readily available from its litigation adversary in Luxembourg,

but it could be achieved through a far narrower request."  (Id. at 38 n.14)

As to Document Requests 6(a), 6(b), 6(c), and 6(e), this Court finds that Petitioner

has adequately explained why records of payments to Langdon, Foley, Dumont, Mizzi, and the

listed corporate entities are relevant:  such documents might reveal "whether incentives or success fees" were paid for denying the payments for the Sponsor Commitment and Removal Entitlement to the Novalpina entities," which could aid Petitioner's "unclean hands" defense in the NOAL GP/Master Luxco Lawsuit.  (See Pet. Opp. (Dkt. No. 22) at 21, 35)  And, as discussed above, Respondents have not shown that responding to Document Requests 6(a), 6(b), 6(c), or 6(e) would be overly burdensome.  Accordingly, the motion to quash Document Request 6 will be denied, except as to Request 6(d).[15]

### D.    Cost-Sharing

Respondents argue that "[i]f the Court is inclined to grant some or all of Petitioner's discovery requests, Petitioner should bear the substantial costs of responding to those requests."  (Resp. Br. (Dkt. No. 17) at 39)

Petitioner responds that "there has been no showing of burden, and thus there has been no showing that cost-sharing is necessary to protect Treo AM from any significant expense."  (Pet. Opp. (Dkt. No. 22) at 38)  Petitioner further contends that Treo AM's "ongoing business relationship with the party in the underlying litigation [– NOAL GP –] is grounds enough to deny a request for costs."  (Id. at 38-39)

Courts consider three factors in determining whether cost-sharing is appropriate in the context of a Section 1782 application:  "'(1) whether [respondent] has an interest in the

---

[15]  As discussed above, the motion to quash will be granted as to Request 6(d) – which seeks documents relating to "payments, assets, or things of value offered, promised, or given to" Langdon, Foley, Dumont, Mizzi, O'Connor, Farrell, Dunn, and the listed corporate entities in connection with the introduction of Stanley Capital Partners to the Fund – because Petitioner has not demonstrated that those documents could "be employed with some advantage or serve some use" as to Petitioner's "unclean hands" defense in the NOAL GP/Master Luxco Lawsuit.  More specifically, Petitioner has not explained how the introduction of Stanley Capital Partners to the Fund could be relevant to its unclean hands defense in that action.

outcome of the case; (2) whether [respondent] can more readily bear the costs; and (3) whether the litigation is of public importance.'" In re Oasis Core Invs. Fund Ltd., No. 23-MC-402 (SHS), 2024 WL 472984, at *4 (S.D.N.Y. Feb. 7, 2024) (quoting In re Kingstown Partners Master Ltd., No. 21-MC-691, 2022 WL 1081333, at *7 (S.D.N.Y. Apr. 8, 2022)).

As to the first factor, while Respondents are not parties to the NOAL GP/Master Luxco Lawsuit, neither are they "quintessential innocent, disinterested bystander[s]." In re First Am. Corp., 184 F.R.D. 234, 242 (S.D.N.Y. 1998). As courts in this District have explained, "[w]here a nonparty was substantially involved in the underlying transaction and could have anticipated that [that transaction would] reasonably spawn some litigation, expenses should not be awarded." Id. (quotation marks and citations omitted). Here, Respondents were substantially involved in the dispute at issue. Indeed, Respondents acknowledge that "while . . . Treo AM is not itself a named participant in [the NOAL GP/Master Luxco Lawsuit], its wholly owned subsidiary, [] NOAL GP, is a party to [that litigation]." (Resp. Br. (Dkt. No. 17) at 24) Moreover, "with the exception of one independent director, [] NOAL GP is made up exclusively of Treo AM personnel working to run the day-to-day operations of the Fund[,]" and "Respondents O'Connor and Farrell, in addition to their roles at Treo AM, are both managers of [] NOAL GP who actively participate in and supervise [related litigation in Luxembourg, including the NOAL GP/Master Luxco Lawsuit], as do Dunn and other Treo AM personnel." (Id.) (citing da Silva Decl. (Dkt No. 18) ¶¶ 5, 31-32)) Given these circumstances, all Respondents have an interest in the outcome of the underlying case. Accordingly, the first factor favors Petitioner.

As to the second factor, while Respondents style themselves as "a small, newly founded investment advisor with limited resources" (id. at 40), Petitioner contends that "Treo

AM has around $859 million in assets under management and its annual fees are between 1-3%

of those assets and a percentage of capital distributed to limited partners." (Pet. Opp. (Dkt. No.

22) at 39) (emphasis in original) (citing July 21, 2023 Plochocki Decl., Ex. E (Mar. 30, 2023

Treo AM ADV Form) (Dkt. No 24-5) at 3; id., Ex. F (Mar. 2023 Treo AM ADV Form Part 2A)

(Dkt. No 24-6) at 9)  And while Respondents claim that Petitioner – the party "seeking to benefit

from the substantial discovery sought" – "has already been paid nearly €20 million in connection

with its removal as General Partner of the Fund (and similar amounts for each year prior in

which it served in that capacity)" (Resp. Br. (Dkt. No. 17) at 40), Petitioner responds that "the

(contested) [Limited Partnership Agreement] that NOAL GP signed with the Fund indemnifies

the general partner's investment adviser out of Fund assets."  (Pet. Opp. (Dkt. No. 22) at 39)

(citing July 21, 2023 Thieltgen Decl., Ex. B (LPA) (Dkt. No. 23-2) ¶ 14.1)  In sum, it is not clear

that Treo AM will pay the cost of producing the ordered discovery.  Given all the circumstances,

the second factor is neutral.

As to the third factor, the underlying litigation involves a private dispute, and is

thus not of "public importance."

Having considered all the factors, the Court concludes that cost-sharing should be

denied.

E.    **Reciprocal Discovery**

Respondents request, in the alternative, that this Court grant them leave to seek

reciprocal discovery, "both for the purposes of advancing the [NOAL GP/Master Luxco

Lawsuit] and for the purpose of defending themselves in additional claims to be brought."

(Resp. Br. (Dkt. No. 17) at 41)  According to Respondents, "[i]n the context of a Section 1782

application, 'Congress granted district courts broad discretion to grant or deny reciprocal

discovery.'"  (Id.) (quoting Sampedro v. Silver Point Cap., L.P., 958 F.3d 140, 145 (2d Cir. 2020))  Respondents further contend that "[c]ourts in this District have approved of reciprocal discovery requests in the context of Section 1782 applications where the reciprocal discovery requests by respondent are 'closely related' to the foreign actions at issue in the application, the petitioner is 'not found in any district in the United States,' where the Respondent has a 'substantial interest' in the underlying action, and where there is 'no process by which [respondent] could seek and obtain documents from [petitioner] in the [foreign] proceedings in the manner in which discovery may proceed in the U.S. under 28 U.S.C. 1782.'"  (Id. at 42) (quoting Application of Consorcio Minero, S.A. v. Renco Grp., Inc., No. 11 MC 354, 2012 WL 1059916, at *4 (S.D.N.Y. Mar. 29, 2012))  According to Respondents, "[h]ere, these factors could readily be met."  (Id.)

Petitioner responds that "there is no 'parity' to be achieved" in granting reciprocal discovery because Respondents describe themselves as "avowed non-part[ies] with no legal interest in the foreign proceedings at all."  (Pet. Opp. (Dkt. No. 22) at 39)  Petitioner further argues that Respondents' "motion to quash hinges on the argument that a fraud action cannot or will not be filed[,]" and "[t]hey thus fail the requirement [that] reciprocal discovery applicants identify a foreign proceeding within reasonable contemplation."  (Id. at 40) (citing In re Application of Furstenberg Fin. SAS, 334 F. Supp. 3d 616, 620–21 (S.D.N.Y. 2018), aff'd sub nom. In re Furstenberg Fin. SAS, 785 F. App'x 882 (2d Cir. 2019))

"'Consistently, the Second Circuit and the Supreme Court [] have suggested that a district court could condition relief [under 28 U.S.C. § 1782] upon a reciprocal exchange of information, as such would lend parity to the disclosure mix.'"  Application of In re Consorcio Minero, S.A., 2012 WL 1059916, at *3 (quoting Minatec Finance S.A.R.L. v. SI Group, Inc.,

No. 08 Civ. 269, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008)).  Reciprocal discovery is

appropriate where "[t]here is apparently no process by which [the party requesting reciprocal

discovery] can seek and obtain documents from [the other party] in the [foreign] proceedings in

the manner in which discovery may proceed in the U.S. under 28 U.S.C. § 1782."  Id. at *4.  In

Sampedro, however, the Second Circuit affirmed a district court's denial of reciprocal discovery

on the grounds that the parties moving for reciprocal discovery were not parties to the foreign

litigation.[16]  Sampedro v. Silver Point Cap., L.P., 958 F.3d 140, 145 (2d Cir. 2020) ("In light of

the high level of discretion given to district courts to determine whether and under what

circumstances reciprocal discovery is appropriate," "it was not unreasonable for the court to

consider whether the party seeking reciprocal discovery would be able to use that discovery in

the foreign proceeding that was the subject of the section 1782 application," despite the moving

parties "maintain[ing] that they ha[d] a 'substantial interest' in that litigation.") (emphasis in

Sampedro) (citing Certain Funds, Accounts &/or Inv. Vehicles, 798 F.3d at 120).

As discussed above, while NOAL GP is a wholly owned subsidiary of Treo AM,

Treo AM itself is not a party to the NOAL GP/Master Luxco Lawsuit.  Accordingly, as in

Sampedro, Respondents seek reciprocal discovery in connection with a foreign proceeding to

which they are not a party.

---

[16]  Citing Application of Consorcio Minero, S.A. v. Renco Grp., 2012 WL 1059916, at *4,
Respondents argue that "[c]ourts in this District have approved of reciprocal discovery requests
in the context of Section 1782 applications where . . . the Respondent has a 'substantial interest'
in the underlying action."  (See Resp. Br. (Dkt. No. 17) at 42) (quotation marks and citation
omitted)  While the Second Circuit later stated that it took "no issue with [the] reasoning" of the
Consorcio Minero court in granting reciprocal discovery, it also stated that the lower court's
reasoning was not "mandatory."  Sampedro v. Silver Point Cap., L.P., 958 F.3d 140, 145 n.3 (2d
Cir. 2020).

And to the extent that Respondents assert that they are entitled to reciprocal discovery because they are likely to be defendants in Petitioner's prospective civil fraud action in Luxembourg, this Court has concluded that no such action is in "reasonable contemplation," because Petitioner has stated that it is uncertain as to whether or not it can proceed with a civil fraud claim. In any event, in moving to quash Petitioner's subpoenas – Respondents have argued that such an action cannot or will not be filed. (Resp. Br. (Dkt. No. 17) at 23-24; Resp. Reply (Dkt. No. 28) at 9-10) Courts in this District have denied reciprocal discovery where such a request is "antithetical to [a movant's] argument that there is no foreign proceeding in reasonable contemplation." In re Application of Furstenberg Fin. SAS, 334 F. Supp. 3d at 620-21.

For these reasons, Respondents' request for reciprocal discovery will be denied.

## CONCLUSION

For the reasons stated above, Respondents' motion to quash (Dkt. No. 16) is granted as to the application to depose Farrell, O'Connor, and Dunn, and as to Document Requests 2, 3, 4, 5, and 6(d). The motion to quash is otherwise denied. Petitioner's motion for a status conference regarding the motion to quash (Dkt. No. 35) is denied as moot. Respondents will produce the discovery authorized in this Opinion by **May 5, 2025**.

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 16, 35) and to close this case.

Dated: New York, New York
April 21, 2025

SO ORDERED.

Paul G. Gardephe
United States District Judge

68